## Wright et al. v. Cane Run Petroleum Co.

(Decided Dec. 17, 1935.)

252

LOUIS I. IGLEHEART for appellants.

CARY, MILLER & KIRK and CHARLES LEIBSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Harry Brenner owned an oil and gas lease on the land of Howard Wright, situated in Daviess county. The Cane Run Petroleum Company, a domestic corporation, owned an oil and gas lease on Williams' 20 acres, adjoining Howard Wright's. Thomas E. Adams and Herman Brenner, a brother of Harry, engaged in business in the firm name of Brener & Adams. They owned no oil and gas leases, but operated drilling machines and engaged in drilling wells for other persons or corporations. Harold Wright was employed, intermittently, by Brenner & Adams, and performed services for them in their business as drillers. When not in their employment, he was employed by the Cane Run Petroleum Company in the operation of its business. Harry Brenner rented an inferior secondhand drilling machine and tools and used them in drilling an oil well on Howard Wright's, within about 25 or 30 yards of the line between it and Williams' land. Harold Wright, at this well, in the night, was killed on August 9, 1933, by the breaking of parts of the drilling machine, while working as a "tool dresser." The Cane Run Petroleum Company had no pecuniary interest in the drilling of the well, but its completion so near the Williams land was regarded by it, and would serve, as a test well on the Williams land. Therefore, to this extent, it was interested in its completion. Herman Brenner was president of the Cane Run Petroleum Company, and Thomas E. Adams its secretary. Harry Brenner, on account of his financial condition, the limited number of his employees, and the inadequacy of the drilling machinery, was not speedily and successfully drilling the well. In order to speed up its drilling and to make its comple-

tion assured, Herman Brenner, as president of the Cane Run Petroleum Company, went to the home of his brother, Harry, and advised him he would like to send employees over to help him complete it. Harry agreed, and Herman stated to him: "We are going to send two men over there to help finish the well." Harold Wright and Eddie Fairchild, at that time, were in the employment of the Cane Run Petroleum Company. It had previously accepted, and was operating under, the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.). Harold Wright and Fairchild had signed its compensation register. About three days before Harold was killed, Herman Brenner, the president of the corporation, directed them to go to the Wright lease and help complete the Harry Brenner well. At the time Harold Wright was so directed he inquired of Herman Brenner who would be his paymaster, and he was assured by Herman Brenner, as president, that the Cane Run Petroleum Company would pay him, if Harry Brenner did not do so. Thereupon he consented to go, and did go, in obedience to the order of the Cane Run Petroleum Company, by and through Herman Brenner. At the time of his death, he was performing the services of a "tool dresser," at the Harry Brenner well, in compliance with the order of the Cane Run Petroleum Corporation, through its president, to go to the Wright land and help complete the well.

At his death, Harold left surviving a widow and two infant children. They made application to the Workmen's Compensation Board for adjusted compensation. On the evidence produced before it, it entered an award allowing them compensation for the death of Harold Wright.

Within the time provided by the statute, the Cane Run Petroleum Company filed in the Daviess circuit court a petition for revew of the board's proceedings and award. The circuit court's finding of facts on the same evidence substantially was: There was no contrariety in the evidence showing the kind of work in which Harold Wright was engaged at the time he was injured which resulted in his death, on the lease of Harry Brenner, and that the Cane Run Petroleum Company had no interest in either the lease or in the well, or the control and management or supervision of either the lease or the drilling thereon; and that the injury

did not arise out of and in the course of his employment as an employee of the Cane Run Petroleum Company. Its conclusion of law was that the Cane Run Petroleum Company was not liable under the Workmen's Compensation Act to Wright's dependents on account of his death. Its decree reversed, set aside, and held for naught the award of the Workmen's Compensation Board.

The Cane Run Petroleum Company now argues that on the facts disclosed by the record herein, the circuit court was correct in holding that it was not responsible for the acts of Harry Brenner or those engaged with Harold Wright in the drilling the well at the time he sustained the injury, resulting in death, and during the entire time he was engaged in his labor at the oil well, he was subject to the orders of Harry Brenner, and in what he did or failed to do, he was acting for him, and that the Cane Run Petroleum Company is not liable for the negligence of Harry Brenner and those engaged with Harold Wright in the drilling the well, occurring while he and Fairchild were employed in the special services of Harry Brenner and acting solely under his orders and directions.

Also, it contends, the power of control is the test of liability under the maxim respondeat superior. If the master cannot command the alleged servant, then the acts of the latter are not his, and he is not responsible for them. If the principal cannot control and direct the alleged agent then he is not his agent. The liability of masters for the acts or omissions of their servants weighs heavily on them; but the hardship would be at least equal if the master were not liable; and it would be attended with injustice, too. If the master be morally innocent, so must the injured party be also; and, of two innocent persons, surely he should suffer through whom it is by the employment of another the mischief has been committed.

To sustain its insistence, it cites to us, and with confidence relies upon the principles and the comparable facts in, McCoy v. Griffith et al., 196 Ky. 406, 244 S. W. 871; Bowen v. Gradison Const. Co., 236 Ky. 270, 32 S. W. (2d) 1014; Carter Coal Co. v. Howard, 169 Ky. 87, 183 S. W. 244; Denton v. Y. & M. V. R. Co., 284 U. S. 305, 52 S. Ct. 141, 76 L. Ed. 310 (and

cases cited therein); Westover v. Hoover et al., 88 Neb. 201, 129 N. W. 285, 19 A. L. R. 215; Central Coal & Iron Co. v. Grider's Adm'r, 115 Ky. 745, 74 S. W. 1058, 25 Ky. Law Rep. 165, 65 L. R. A. 455; Thomas v. Great W. Min. Co., 150 Okl. 212, 1 P. (2d) 165 (citing Westover v. Hoover, supra); 18 R. C. L. 784-490; 39 C. J. 127, sec. 1462.

The Workmen's Compensation Act was neither considered nor construed, and the question here presented was not determined, in any one of those cases. The principles so well and admirably stated in them do not apply to, and control, the liability of the employer and the remedy and right of the employee where they have accepted the Workmen's Compensation Act and are acting thereunder.

Apart from the compensation for the particular injuries specified in our Workmen's Compensation Act (section 4897, Kentucky Statutes), compensation to an employee under it is awarded solely for incapacity, not for an injury as such. Federico's Case, 283 Mass. 430, 186 N. E. 599, 88 A. L. R. 630; DeFilippo's Case, 284 Mass. 531, 188 N. E. 245; Donahue's Case (Mass.) 198 N. E. 149.

The criterion of compensation under it is "the average weekly wages" which the employee is able to earn at the time of his injury or death in the service of his employer, and not the damages as such recoverable for negligence. Sensk's Case, 247 Mass. 232, 141 N. E. 877. The prevailing rule in a case like unto this one, where there is no specific statutory provision, is: The general employer who carries on a hazardous employment is liable under the Workmen's Compensation Law for injuries sustained or death incurred by his employees arising out of and in the course of their employment, although at the time they were working under the direction of another under the direction of the general employer. In such case, the employer who directs his servant to work for another is regarded in law as the general employer, and the one for whom he works as a special employer, and the relation of employer and employee, in the circumstances, exists between both of them and the employee himself. If the employee is under the exclusive control of the special employer in the performance of work which is a part of his business, he is, for the time be-

ing, his employee; yet, at the one and the same time, he is the employee of the general employer, as well as the employee of the special employer. And he may, under the common law of master and servant, look to the former for his wages and to the latter for damages for negligent injuries; so under the Workmen's Compensation Act he

"may so far as its provisions are applicable, look to the one or the other, or to both, for compensation for injuries due to occupational hazards."

Umsted v. Schofield Engineering Const. Co., 203 Cal. 224, 263 P. 799, 800; Dale v. Saunders Bros., 218 N. Y. 59, 112 N. E. 571, Ann. Cas. 1918 B, 703; Comerford's Case, 224 Mass. 571, 113 N. E. 460; Sibley v. State, 89 Conn. 682, 96 A. 161, L. R. A. 1916C, 1087; Rongo v. R. Waddington & Sons, 87 N. J. Law, 395, 94 A. 408; Case of Pigeon, 216 Mass. 51, 102 N. E. 932, Ann. Cas. 1915A, 737. We adopted and applied these principles in Nugent Sand Co. v. Hargeshimer, 254 Ky. 358, 71 S. W. (2d) 647.

The construction of the Workmen's Compensation Act, in so far as it is now under review, is elaborately annotated in 3 A. L. R. 1181, 34 A. L. R. 768, and 58 A. L. R. 1468. See section 4890, Ky. Statutes.

The Cane Run Petroleum Company on the proven facts was the general employer, and Harry Brenner, the special employer, of Harold Wright at the time he sustained the injury resulting in his death. It is true Harry Brenner had the exclusive right to discharge Wright as to the work in which the former was engaged at the time the latter sustained the injury, but such discharge would not have the effect of discharging him, if it had occurred, as an employee of the Cane Run Petroleum Company. No act of Harry Brenner in relation to Wright could interrupt, interfere with, or sever the master-servant relation of the Cane Run Petroleum Company and Wright. Such could be accomplished only by an act or the the authority of the Cane Run Petroleum Company, other than merely directing or ordering him to aid or assist in the completion of the Harry Brenner well.

The evidence brought here, though conflicting, fully authorized and sustained the award of the Compensation Board, especially when weighed and measured

by the principles herein stated. The circuit court erred in disturbing the board's finding and its award: Warfield Natural Gas Co. v. Muncy, 244 Ky. 213, 50 S. W. (2d) 543; Green River Fuel Co. v. Fryar, 248 Ky. 51, 58 S. W. (2d) 232.

Wherefore, the judgment is reversed, with directions to dismiss the petition and for proceedings consistent herewith.