# Mengel Co. v. Axley et al.

December 2, 1949.

Middleton, Seelbach, Wolford, Willis & Cochran and Hubert T. Willis for appellant.

F. D. Curry and J. L. Kilgarriff for appellees.

STANLEY, COMMISSIONER—Affirming.

The appeal is from a judgment confirming an award of the Workman's Compensation Board. The appellant, The Mengel Company, concedes there is evidence to support the finding of an industrial accident though it maintains the claim is without merit. That view is

offered as something of an apology for relying upon technical grounds of attack upon the award. We reach the opposite view of the merits and think the man has a meritorious claim.

For about twenty years the appellee, William A. Axley, had been a laborer for this company. He was also a ''lay preacher'' and had some leaves of absence. As his age crept upon him, the character of his work seems to have been diminished until he had become a janitor in 1944. His duties were to keep the floors clear of rubbish and refuse. The job kept him until after other employees had finished their work and gone home. On the occasion of the accident he was using a scraper to remove glue and varnish from a booth where furniture was sprayed. The floor was oiled to permit the slipping of the furniture around. Axley slipped and was struck in the groin by the handle of the scraper. He was alone in the building at the time. He suffered pain during the night but feeling better the next morning and not regarding his accident as serious, he returned to work. He began having some pain and noticed a ''bulge'' in the lower part of his abdomen, and asked time off to see his doctor without telling his foreman what the trouble was. The doctor advised him that he was ruptured on both sides and gave him a signed memorandum reading, ''The work W. A. Axley is doing is dangerous to his health on account of a rupture.'' Axley showed this to his foreman, superintendent and ''everyone that had anything to do with it, but they did nothing about it.'' He gave the memorandum to the company nurse the next evening, and she sent him to the company's doctor. This doctor sent word to the company to give him light work as he had a double, bilateral hernia. This was put in the hands of the superintendent, but he told Axley to go on to work. He refused to continue working in the varnishing booths and was discharged on January 25, 1945. During this period the company had furnished him with a truss. Afterward Axley found employment with a bakery doing light work and receiving substantially the same wages. That is his testimony.

The testimony in behalf of the employer, other than being some contradiction on matters of little materiality or consequence, is that Axley had told his

foreman "around the first part of November" that he had been hurt about two months before and was going to his own doctor. He was told to report it to "First Aid" and go to the company's doctor. The First Aid records show that he did. While it appears from the company's evidence that no one in authority to discharge Axley had done so, it is stated by a foreman that he told the man to work in the booth and when he refused, he was told to do so "or else." Axley replied, "It's else" and quit. We need not quibble whether he was discharged or voluntarily quit. The company's doctor testified Axley reported to him on November 15, 1944, and recited in a vague way what had happened. The doctor found he had a small and incomplete hernia. The absence of Dr. Baker, who originally treated Axley, is not accounted for. Another doctor who examined him in March or April, 1945, found his condition to be that usual for a man sixty-three years old except for a hernia on both sides, one more pronounced than the other. The doctor testified, "This man will eventually go on to complete hernia if he does anything that requires muscular effort, standing and straining." He would not advise an operation. The man had a little evidence of a kidney infection, and being asked whether he had any prostate trouble, the doctor answered, "Oh, we know every man at sixty-three has some prostate trouble, that goes without anybody saying so." An expert doctor testified in answer to a hypothetical question based principally upon the evidence as the respondent company regarded it. He expressed the opinion that the man had not suffered a sudden, complete hernia which had not existed in any degree prior to the accident. The opinion seems to have been based upon or influenced by the expressed view of the doctor that a single traumatic injury cannot produce hernia.

One of the grounds upon which the appellant seeks to reverse the judgment is that there was no apportionment of disability between the claimed industrial injury and preexisting disease. The argument is that the claimant's doctor testified that he was suffering from prostate trouble, kidney trouble, anemia and debility of advanced age. That is an exaggerated deduction. We think the recitation of the evidence does not support the view that there was any previous disability. Nor

is it helped by a passing remark in his testimony as to something he had told his wife about getting old.

It is further argued that there is no evidence upon which the Board could have based the percentage of disability. It is true that no doctor or anybody else undertook to express the degree of disability in mathematical terms, but the facts themselves justified the conclusion of the Board that it was 70%. City of Olive Hill v. Parsons, 306 Ky. 83, 206 S. W. 2d 41. The fact that he is receiving a little more money in wages than was paid him while working for the company does not prove him to be as good or a better man physically than he was at that time. Perhaps the scale of wages is higher. Undoubtedly the general increase in the standard of wages has something to do with it. The facts are that the man suffered injuries, his doctor advised against his doing the same kind of work and that his present work is to wipe off machinery with a cloth. These facts are sufficient to have enabled the Board, which has had much experience in these matters, to reach the conclusion that it did reach.

The major attack upon the award is unreasonable delay in giving notice of the injury and disability. The statute provides for a certain formal notice to be given an employer of an accident but declares that such notice shall not be deemed insufficient unless it is shown that the employer was in fact misled to his injury thereby. It is further provided that "delay in giving notice shall not be a bar to the proceedings under this chapter if it is shown that the employer, his agent or representative had knowledge of the injury or that the delay or failure to give notice was occasioned by mistake or other reasonable cause." KRS 342.200. In construing this provision, the Court has regarded as perhaps the most important factor whether the employer was misled or his ability to defend was prejudiced. A further important consideration is whether the delay was occasioned by mistake or reasonable cause. Hay v. Swiss Oil Company, 249 Ky. 165, 60 S. W. 2d 385; Turner, Day & Woolworth Handle Company v. Morris, 267 Ky. 217, 101 S. W. 2d 921; American Rolling Mills Co. v. Stevens, 290 Ky. 16, 160 S. W. 2d 355, 145 A. L. R. 1256.

Using September 1, 1944, as being the date of the injury and November 13 as the date on which the com-

pany's attention was called to it, the appellant submits that this two and one-half months which had intervened was unreasonable delay. September 1 is the date stated in the application for compensation, but Axley testified that it was wrong. In relation to other activities of definite time, he fixed the date as on or about September 30; so the intervening period, according to the claimant, was only one and one-half months. A foreman definitely fixed November 1 as the date he received knowledge of the accident which, of course, shortened the period to one month. There is nothing even to indicate the rights of the employer were affected by this delay. There was apparently an honest belief that the injury was slight. The delay, then, may be regarded as occasioned by mistake. Necessity seems to have been accountable for the man's continuing to work. A poor man ought not to be penalized for trying to continue at his job rather than asserting a claim which may prove to be unsubstantial or even specious. We concur in the rulings below that this delay was not unreasonable or prejudicial. The cases cited above sustain this conclusion.

The judgment is affirmed.