**MARC BLACKBURN BRICK COMPANY et al., Appellants,**

**v.**

**Ellis Dewey YATES, Jr., et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 26, 1968.

Rehearing Denied March 29, 1968.

Harold Ricketts, Gordon L. Johnson, Harlin, Parker, Ricketts, Lucas & English, Bowling Green, for appellants.

G. D. Milliken, Jr., Milliken & Milliken, Bowling Green, for appellee Yates.

Davis & Mahan, Louisville, C. H. Reynolds, Bell, Orr & Reynolds, Bowling Green, for appellee Cherry.

J. Keller Whitaker, Frankfort, for Workmen's Compensation Bd.

EDWARD P. HILL, Judge.

Appellant, the employer, seeks to upset an award by the Workmen's Compensation Board approved in circuit court in favor of Ellis Dewey Yates, Jr., the employee.

Appellant questions the sufficiency of notice of injury required by KRS 342.185 and contends that the relationship of employer-employee did not exist between it and Yates on the date of the claimed injury.

Inasmuch as appellee Mac G. Cherry, doing business as Cherry Distributing Company, has admitted this case has been correctly stated by appellant and appellee Ellis Dewey Yates, Jr., has made no statement in conflict therewith, we copy herewith appellant's statement of the facts:

"On February 26, 1965, Marc Blackburn, owner of appellant Marc Blackburn Brick Company, received a request from appellee, Mac G. Cherry, d/b/a Cherry Distributing Company, for assistance in locating extra men to work that night as temporary help with the loading and unloading of trucks located on the premises of Cherry Distributing Company.

"The appellant owner, Marc Blackburn, telephoned appellee, Ellis Dewey Yates, Jr., a Blackburn Brick Company truck driver and another employee, Tommy Eaden, who were temporarily out of work because of adverse weather conditions and inquired if they were available to do the work about which appellee Cherry had inquired. Both men agreed to do the work and the appellant owner, Blackburn, went with them to appellee Cherry's premises and informed appellee Cherry he had located some men to help. Thereafter, the appellant owner, Blackburn, left the Cherry premises to go about his own business.

"Appellee Yates worked on appellee Cherry's premises approximately five and one-half hours on that day and during this period of time appellee Yates sustained the injury referred to in this appeal. Upon completion of the work on appellee Cherry's premises, appellee Yates returned to work for appellant Blackburn as a truck driver as the weather conditions permitted.

"The day after the work was completed appellee Cherry made arrangements with appellant Blackburn to pay appellee Yates, for the work he had performed the night before and also made arrangements to reimburse appellant Blackburn for the amount paid to appellee Yates.

"The testimony conflicts as to the exact day that appellee Yates notified appellant Blackburn of his accident, injury and disability. Appellee Yates states first notice of accident and injury was during the first week of May, 1965, which corresponds with the period of time he was first treated for the injury by Dr. Richard Bevin. Appellant Blackburn states he was not notified of the accident or injury until receiving a letter from the Veterans Administration Hospital in Nashville, Tennessee, concerning a surgical operation on appellee Yates. Before receiving the letter from the Veterans Administration Hospital, appellant Blackburn recalled previous discussions with appellee Yates concerning an absence from work, for medical treatment, however these discussions were limited to a non-industrial personal ailment which appellee Yates was suffering."

▮▮ We first direct our thoughts to the question of notice. KRS 342.185 provides:

"No proceeding under this chapter for compensation for an injury or death shall be maintained unless *a notice of the accident shall have been given to the employer as soon as practicable after the happening thereof \* \* \*.*" (Emphasis ours.)

It is noted that the statute, supra, does not fix a definite time in which notice is required. But it must be given as soon as "practicable." Whether notice has been given as "soon as practicable" depends upon all the circumstances of the particular case.

Liberal legislative intent in the matter of time required in the giving of notice of an injury is further demonstrated by KRS 342.200, which reads as follows:

"The notice shall not be invalid or insufficient because of any inaccuracy in complying with KRS 342.190 unless it is shown that the employer was in fact misled to his injury thereby. Want of notice or delay in giving notice shall not be a bar to proceedings under this chapter if it is shown that the employer, his agent or representative had knowledge of the injury or that the delay or failure to give notice was occasioned by mistake or other reasonable cause."

The Act, itself, directs this court to follow liberal rules of construction. KRS 342.004.

▮▮ The provisions of the statute are mandatory that notice be given, but this court has uniformly said that the statute should be liberally construed in favor of the employee to effectuate the beneficent purposes of the Compensation Act. Cf. Bartley v. Bartley, Ky., 274 S.W.2d 48 (1954). In *Bartley* the injury was identical to the injury in the present case, except the element of time is different. The time in *Bartley* was forty-four days; while in the present case, it was sixty-six days before notice was given. The court said in *Bartley* at page 49:

"In view of the nature of the alleged injury suffered by the appellant and the *known fact that herniated discs often appear gradually and are disabling in proportion to the degree of progress of the herniation,* we conclude as a matter of law the notice was adequate and was given as soon as practicable." (Emphasis ours.)

We are not unmindful of the following statement in Whittle v. General Mills, Ky., 252 S.W.2d 55, 57, cited by appellants:

"We are not prepared to say that a herniated disc is such an injury that no prejudice would result to the employer from delay in giving notice."

We make no assault on the above statement from *Whittle*. We may envision a number of situations in which the rights of the employer could be seriously prejudiced by the failure to give notice of injury. It should be pointed out, however, that an injury such as a herniated disc may result from only slight exertion, leaving the injured person uncertain whether the injury is serious. He hopes the pain is temporary and will go away. But if it persists, he must act diligently to ascertain his trouble and promptly notify his employer. The nature of the injury is important on the question of notice insofar as it relates to the knowledge of the injured person of the extent of his injury.

▮▮ The Workmen's Compensation Board found that Yates "sustained" an injury on February 26, 1965, and "that due and timely notice of the accident was afforded the defendant employer as soon as claimant learned of his disability and was advised by the doctor of his condition and said employer was not prejudiced or misled by the delay in giving notice." These findings are based on substantial evidence. Really there is little conflict in the evidence in regard to notice.

It is concluded that notice was given the employer "as soon as practicable" under the circumstances of this case. See Peabody Coal Co. v. Harp, Ky., 351 S.W.2d 170, 171, and Mengel Co. v. Axley, 311 Ky. 631, 224 S.W.2d 921. We quote from *Mengel*, 224 S.W.2d at page 923:

"There is nothing even to indicate the rights of the employer were affected by this delay. There was apparently an honest belief that the injury was slight. The delay, then, may be regarded as occasioned by mistake. Necessity seems to have been accountable for the man's continuing to work. A poor man ought not to be penalized for trying to continue at his job rather than asserting a claim which may prove to be unsubstantial or even specious. We concur in the rulings below that this delay was not unreasonable or prejudicial."

Yates said: "I didn't think I was hurt. I went on ahead and went on working. * * * I needed to work and I needed the money and I went ahead and worked as long as I could."

Appellant contends that the finding of the board that the injury occurred at a time when Yates was an employee of Blackburn is contrary to the evidence.

Appellant called Yates by telephone and made the arrangements for the latter to do the work unloading Cherry's truck on the night of the injury. Blackburn met Yates at a designated point and took him to the Cherry premises. On the next day, Blackburn and Cherry agreed that Blackburn would pay Yates for his labor. Blackburn was asked and answered as follows:

"Q. Now Mr. Blackburn, did Mac Cherry owe you anything or anything of that kind, were you butting this off against anything he owed you or how did you make your settlement of your accounts?

"A. I had bought some trucks from Mac and bought some other trucking equipment and stuff up there, and I still owed him some on some of this equipment, stuff, chains and things that I didn't buy when I bought the trucks. When I bought the trucks, I bought and paid him for them. He had some other stuff up there I needed and I bought them and he told me, he said you just go ahead and pay those fellows like you have been paying them and whatever that is, you just send me a bill and I will give you credit.

"Q. That's the way it happened, he gave you credit?

"A. He gave me credit on what I owed on the account. See I had an account and stuff up there.

"Q. Mr. Cherry wanted you to pay him?

"A. He wanted me to carry the payroll. He said I don't want to put them on the payroll for this little amount.

"Q. He wasn't on Mac Cherry's payroll for several reasons. No. 1, the question of deductions and the question of his insurance coverage and whether or not he would be under the Workmen's Compensation Act of Mac Cherry's and social security deductions and things of that kind, is that correct?

"A. That wasn't brought up or nothing, but he just asked me to do that if it was all right with me. I said it's all right with me. We didn't go through all that.

"Q. That was the general understanding?

"A. *I imagine that was his idea I guess.*" (Emphasis ours.)

Appellant cites one case in support of his contention. In that case, Harbison-Walker Refractories Co. v. Brown, 296 Ky. 629, 178 S.W.2d 39, the employee was injured while engaged in "an enterprise for his own exclusive benefit." The court prop-

erly held the injury did not arise out of and in the course of his employment. This case is of no assistance on the present question.

This court said in Wright v. Cane Run Petroleum Co., 262 Ky. 251. 90 S.W.2d 36, 38:

"[T]he employer who directs his servant to work for another is regarded in law as the general employer, and the one for whom he works as a special employer, and the relation of employer and employee, in the circumstances, exists between both of them and the employee, himself. * * * And he may, under the common law of master and servant, look to the former for his wages and to the latter for damages for negligent injuries; so under the Workmen's Compensation Act he 'may so far as its provisions are applicable, look to the one or to the other, or both, for compensation for injuries due to occupational hazards.' "

We find respectable support for the rule announced in *Wright*, supra, in Larson's Workmen's Compensation Law, Volume 1A, section 48, page 805, from which we quote:

"Lent Employees. When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work.

"When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation. * * * The only presumption is the continuance of the general employment, which is taken for granted as the beginning point of any lent-employee problem."

■ We conclude there was substantial evidence to support the award and the con-clusion therein that the injury arose out of and in the course of Yates' employment with Blackburn.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN and PALMORE, JJ., concur.

STEINFELD, MONTGOMERY, and OSBORNE, JJ., dissent.

DISSENTING OPINION

STEINFELD, Judge.

I respectfully dissent from the opinion for two reasons. The opinion states that:

"The appellant owner, Marc Blackburn, telephoned appellee, Ellis Dewey Yates, Jr., a Blackburn Brick Company truck driver and another employee, Tommy Eaden, who were temporarily out of work because of adverse weather conditions and inquired if they were available to do the work about which appellee Cherry had inquired. Both men agreed to do the work and the appellant owner, Blackburn, went with them to appellee Cherry's premises and informed appellee Cherry he had located some men to help. Thereafter, the appellant owner, Blackburn, left the Cherry premises to go about his own business."

Yates was not a loaned employee. Rice v. Conley, Ky., 414 S.W.2d 138 (1967).

Yates claimed that he was injured on February 26, 1965. KRS 342.185 requires that " * * * a notice of the accident shall have been given to the employer as soon as practicable after the happening" of the injury. More than 63 days passed before notice was given. The phrase "as soon as practicable" has been construed in Peabody Coal Company v. Harp, Ky., 351 S.W.2d 170 (1961), to mean that notice must be given "within a reasonable time under the circumstances of each particular case". See cases cited therein. Reasonable

promptness is required. The delay must have been occasioned by reasonable cause. No reason is offered by Yates that convinces us that the notice was given "as soon as practicable" after the happening of the injury.

MONTGOMERY and OSBORNE, JJ., join in this dissent.