FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,

v.

RELIANCE INSURANCE
CORPORATION,
Defendant.

Civ. A. No. 88–192.

United States District Court,
E.D. Kentucky,
Ashland Division.

Aug. 7, 1989.

Richard A. Getty, Sam P. Burchett, Frost & Jacobs, Lexington, Ky., and David C. Horn, Frost & Jacobs, Cincinnati, Ohio, for plaintiff.

James W. Smirz, Landrum & Shouse, Lexington, Ky. and Steven Z. Kaplan, Hart, Bruner & O'Brien, Minneapolis, Minn., for defendant.

## MEMORANDUM

SILER, Chief Judge.

This matter comes before the Court upon defendant's motion for summary judgment, and motion for partial summary judgment. Plaintiff FDIC seeks recovery under a bank's blanket bond policy for losses sustained from a fraudulent loan scheme perpetrated by the bank's president ("Ruley") and a loan officer ("Knipp"). Loans were made to Chris Crowe Co. and Grayson Pallet Co., related entities which operated (and were to eventually purchase) a sawmill owned by the People's Bank ("Bank"). Chris Crowe Co. was owned by Chris Raney, and Grayson Pallet Co. was owned by Raney's brother, Wendell Raney, who together defaulted on loans totaling over two million dollars. Defendant Reliance Insurance Company denied the Bank's initial claim, as well as a subsequent claim furthered by the plaintiff after the Bank came under its receivership control.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT:

Defendant initially moves for summary judgment on the questions of timely notice, including the propriety of an amended proof of loss which was filed more than a year after the initial claim.

*Timely Notice:*

Defendant argues that plaintiff failed to comply with the notice provisions of the Bond. The relevant obligations imposed by the Bond require the claimant to make timely notices and filings from the date of discovery:

This bond applies to loss discovered by the Insured during the bond period. Discovery occurs when the Insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the bond has been or will be incurred, even though the exact amount or details of loss may not then be known.

Bond, § 4. At issue, then, is the precise date of discovery of the loss. Defendant cites *Shipley v. Kentucky Farm Bureau Ins. Co.*, 747 S.W.2d 596 (Ky.1988), for the proposition that notice can be untimely as a matter of law. *Shipley* holds that notifying the insurance carrier thirteen months after a serious automobile accident was not "as soon as practicable" as required by the contract. The date of an automobile accident is somewhat easier to divine than exactly when a Board of Directors came to the realization that loan irregularities were the result of employee fraud of such magnitude that the Bank would have to be closed. All of the circumstances of a particular case must be considered to determine whether timely notice has been given. *Marc Blackburn Brick Co. v. Yates*, 424 S.W.2d 814 (Ky.1968).

Case law generally defines discovery in terms of actual knowledge, rather than merely a suspicion. *See American Surety Co. v. Pauly*, 170 U.S. 133, 145, 18 S.Ct. 552, 557, 42 L.Ed. 977 (1898); *Federal Deposit Insurance Corporation v. Lott*, 460 F.2d 82 (5th Cir.1972); *Maryland Casualty Co. v. Magoffin Co. Board of Education*, 358 S.W.2d 353, 358 (Ky.1961). The Bond's own definition of discovery incorporates a reasonable person standard, anticipating a determination by a trier of fact. *See United Sates Fidelity & Guaranty Co. v. Empire State Bank*, 448 F.2d 360, 364 (8th Cir.1971) ("In determining when discovery has taken place, the trier of fact must find pertinent underlying facts known to the insured and must further determine subjective conclusions reasonably drawn therefrom."). Plaintiff has entered an affidavit from George Hogg, a member of the Bank's Board of Directors, attesting that the Board did not know or suspect the dishonesty of Ruley and Knipp prior to July, 1986. This affidavit presents material issues of fact as to both the timing and quality of knowledge acquired by the Board. Therefore, the date of discovery cannot be determined by the Court as a

matter of law. As the discovery date will ultimately determine the timeliness of notice, summary judgment is inappropriate on the issues of initial notice and commencement of litigation.

*Amended Proof of Loss:*

Also relevant to the date of discovery is the timeliness of the amended proof of loss, an issue raised in both defendant's motion for summary judgment and alternate motion for partial summary judgment. Defendant asserts that the plaintiff's attempt to file an amended proof sixteen months after its initial proof (and thirteen months after termination of coverage) is outside of the six month period allowed for filing a Proof of Loss with full particulars. The initial Proof of Loss was filed March 16, 1987. The Bond was terminated and no coverage existed for any losses discovered after June 2, 1987. The plaintiff filed its amended Proof of Loss on July 14, 1988. The amended Proof of Loss adds Knipp as another party, and claims additional losses of $1,111,085. Accordingly, defendant declares that either this is an untimely new claim, or evidence that plaintiff did not fulfill the full particulars requirement of the original Proof of Loss, and urges the Court to dismiss the losses included in the amendment.

 Plaintiff remonstrates that every actual or potential loan loss contained in the amended Proof of Loss was previously identified in the original Proof of Loss, and is based on the same set of circumstance. The inconsistent monetary claims arise primarily from collateral overvaluation in the original Proof of Loss. Rather than establish a ceiling of liability, the purpose of a Proof of Loss "is to allow an insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it." *Commercial Travelers Mutual v. Witte*, 406 S.W.2d 145, 148 (Ky.1966); *New Orleans Ins. Co. v. O'Brien*, 8 Ky.L.Rptr. 785 (1887). For purposes of this motion such filings satisfy the "full particulars" requirement, which must be construed reasonably, with the insured supplying information sufficient to enable the insurer to intelligently prosecute its claim.

 Furthermore, in denying the initial claim, defendant invited the Bank in its October 7, 1987, rejection letter to provide it with new information and documents to support the Bank's claim. There is nothing in the Bond that precludes or sets a deadline for the submission of an amendment to the Proof of Loss.[1] Kentucky law holds that amended proofs of loss relate back to the original proof of loss, and thus cannot be rejected by the insurance carrier on the ground that they were filed after expiration of the notice period. *Svea Fire & Life Ins. Co. v. Foxwell*, 234 Ky. 95, 27 S.W.2d 675 (1930). *See Hutchinson v. Otis, Wilcox & Co.*, 190 U.S. 552, 23 S.Ct. 778, 47 L.Ed. 1179 (1903); *In re the Matter of Donovan, Wire and Iron Co.*, 822 F.2d 38 (8th Cir.1987).

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT:

Defendant's alternate motion for summary judgment asks for dismissal of those plaintiff's claims which are based on losses arising from loans approved by the Bank's Board of Directors, losses arising from Raney's conversion of factoring loans after the dismissal of the Bank employees, and losses arising from loans that were in excess of statutory limits when the Crowe and Grayson enterprises' credit extensions are aggregated.

*Board of Director Approval:*

 Defendant asserts that the fraudulent loans which were approved at Board of Directors' monthly meetings should be excluded from coverage because the Board should have known not only that the scope of loans to Chris Crowe Co. and Grayson Pallet Co. had reached an alarming level, but also that the loans were well in excess of Ruley's and Knipp's personal lending

---

1. Insurance policies are to be liberally construed and any doubts are to be resolved in favor of the insured. *Wolford v. Wolford*, 662 S.W.2d 835 (Ky.1984); *Davis v. American States Ins. Co.*, 562 S.W.2d 653 (Ky.App.1978).

limits. While a Board may not hide from liability behind poor management practices, case law requires actual knowledge of some specific fraudulent or dishonest act which might involve the insurer. *See Alfalfa Electric Cooperative, Inc. v. Travelers Indemnity Co.,* 376 F.Supp. 901, 913 (W.D.Okla.1973) (the fact that plaintiff's Board of Trustees may not have understood all of that which it approved at a time when it had all of the facts at its disposal does not make the acts dishonest); *Federal Deposit Insurance Corporation v. National Surety Corp.,* 281 N.W.2d 816 (Iowa 1979) (although the directors had knowledge that excess loans had been made, they were justified in believing that those loans would be repaid and would not be repeated; only after the Bank was closed was the full extent of the fraudulent and dishonest practices apparent).

### Conversion of the Accounts Receivable:

■ It is alleged that Raney fraudulently diverted $240,000 of Chris Crowe Co.'s and Grayson Pallet Co.'s accounts receivable (which had been pledged as security for loans to those two companies) to another bank. As there has been no evidence presented that neither Knipp nor Ruley facilitated these thefts, defendant asserts that this loss is not recoverable under the Bond, which insures only losses directly resulting from the fraudulent or dishonest acts of an insured's employees. However, proximate cause is generally an issue left to the trier of fact. *Princess Garment Co. v. Fireman's Fund Ins. Co.,* 115 F.2d 380 (6th Cir.1940). The determination whether an independent and intervening act is sufficient to cut off the chain of causation is a factual issue. *Grover Hill Grain Co. v. Baughman–Oster, Inc.,* 728 F.2d 784 (6th Cir.1984).

Further, "[i]t is an established rule of insurance law that where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss." *Goodyear Rubber and Supply, Inc. v. Great*

*American Ins. Co.,* 545 F.2d 95, 96 (9th Cir.1976). *See Thropp v. Bache Halsey Stuart Shields, Inc.,* 650 F.2d 817 (6th Cir.1981) (holding that the subsequent criminal forgeries of a third party were not an intervening cause which cut off the defendant's liability for its negligence in turning certain checks over to such third party); *United Fuel Gas Co. v. Thacker,* 372 S.W.2d 784, 787 (Ky.1963) ("an intervening cause which would insulate from liability the person creating a condition must be independent and unrelated to the original act"); *Home Ins. Co. v. Hamilton,* 253 F.Supp 752 (E.D.Ky.1966), *subsequent jury verdict rev'd on other grounds,* 395 F.2d 108 (6th Cir.1968) (proximate cause, ordinarily a jury question, is that which produces injury in a natural and continuous sequence, unbroken by any independent responsible cause). It cannot be said as a matter of law that Raney's conversion of the accounts receivable was entirely independent of the fraud perpetrated on the Bank, thereby making summary judgment inappropriate on this issue.

### Aggregation:

■ Plaintiff contends that the Bank's loans to Chris Crowe Co. and Grayson Pallet Co. should have been aggregated under KRS 287.280, and the resulting violation of that statute's lending limits constitute yet another fraud perpetrated on the Bank by Ruley and Knipp. Defendant notes that the limits contained in KRS 287.280 do not apply to corporations, only persons. However, the corporate shell may be disregarded when used for fraudulent purposes. *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir.), *cert. denied,* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979). Should the Court pierce the corporate veil of the Crowe and Grayson entities, KRS 287.280 could apply to the loans in question. *See Atherton v. Anderson,* 86 F.2d 518 (6th Cir.1936), *rev'd on other grounds,* 302 U.S. 643, 58 S.Ct. 53, 82 L.Ed. 500 (1937); *Hughes v. Reed,* 46 F.2d 435 (10th Cir. 1931). Therefore, the plaintiff's contentions that KRS 287.280 requires aggregation of the Crowe and Grayson loans will

not be dismissed at this stage of the proceedings.