**MID–AMERICA BANK OF CHASKA, successor to Citizens State Bank of Green Isle, Plaintiff,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant.**

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Third Party Plaintiff,**

v.

**Donald HERD, Daniel Brown, and Ronald Ott, Third Party Defendants.**

No. Civ. 3–89–308.

United States District Court, D. Minnesota, Third Division.

Sept. 21, 1990.

John L. Devney and Mark J. Frenz, Briggs and Morgan, Minneapolis, Minn., for plaintiff.

Peter D. Sullivan, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., and David Donna, Lindquist & Vennum, Minneapolis, Minn., for defendant.

## ORDER

DEVITT, District Judge.

## INTRODUCTION

In this diversity action brought by Mid-America Bank of Chaska ("Mid-America") against American Casualty Company of Reading, Pennsylvania ("American Casualty") based upon an insurance contract, defendant moves for summary judgment. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

American Casualty issued a "Banker's Blanket Bond" ("the bond") to BancServices Corporation effective May 1, 1985. Under the bond, American Casualty agreed to indemnify Mid-America [1] for various types of potential losses.

Plaintiff filed suit on the bond on May 15, 1989 to recover for losses incurred as a result of the dishonest and fraudulent conduct of three former employees: Donald Herd (bank president), Daniel Brown (vice-president), and Ronald Ott (assistant cashier). Plaintiff alleges that these three employees improperly diverted bank funds for the benefit of third parties and implemented a number of elaborate devices to cover up their crooked activities. Plaintiff claims that it lost $745,783.66 on loans made to twenty-four customers as a direct result of these activities.

Among the various schemes employed by Herd, Brown, and Ott were the following:

1. Plaintiff Mid-America is a successor to Citizens State Bank of Green Isle.

—Unauthorized loans were made by approving overdrafts on customer checking accounts.

—Loans were made for hidden purposes by stating false purposes for the loans in the bank records.

—Loans were made to one person for the benefit of another.

—Loans were made by permitting checks to be drawn against fabricated checking balances.

—Loans were made in the form of cashiers' checks issued by the bank without payment of funds in the bank.

—Customer collateral was released without payment of underlying debts.

—Loans were renewed or extended without collecting interest and waiving interest.

—Loans were made without interest being charged.

The three employees concealed the diversion of bank funds in a variety of ways. For example, they submitted false written reports to and orally misled the bank's Board of Directors. They also removed and destroyed certain loan performance documents and altered various bank records pertaining to customer loans.

Plaintiff bases its claim upon Insuring Agreement A of the bond which provides that defendant shall indemnify plaintiff for:

A. Loss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others.

Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent

(a) to cause the insured to sustain such loss, and

(b) to obtain financial benefit for the Employee or for any other person or organization intended by the Employee to receive such benefit ...

Defendant bases the present motion upon various bond provisions including the following contractual limitation of actions provision found at section 5(d) which provides, in relevant part:

Legal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss

...

Section 4 of the bond defines "discovery" as follows:

This bond applies to loss discovered by the insured during the Bond period. Discovery occurs when the insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the bond has been or will be incurred, even though the exact amount or details of the loss may not then be known.

Notice to the Insured of an actual or potential claim by a third party which alleges that the Insured is liable under circumstances which, if true, would create a loss under this bond constitutes such discovery.

Finally, Section 12 of the bond provides for termination of coverage as to any employee "as soon as any Insured, or any director or officer not in collusion with such person, shall learn of any dishonest or fraudulent act committed by such person ..."

According to defendant, it is indisputable that regulatory and internal examinations as well as certain counterclaims by debtors alerted plaintiff to the clandestine nature of its employees' activities more than two years prior to this lawsuit. Hence, defendant contends that summary judgment in its favor is appropriate. In the alternative, defendant contends that it is entitled to partial summary judgment because certain types of losses claimed by the bank are not covered by the bond.

## DISCUSSION

The Court is familiar with the standards for deciding motions on summary judgment. Summary judgment is an extreme remedy and only appropriate where there exists no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. Pro. 56(c); *Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 571 (8th Cir.1988). Here, to survive defendant's motion, plaintiff need only present evidence from which a jury might return a verdict in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*, 477 U.S. at 255, 106 S.Ct. at 2513.

 The first issue presented is whether it is beyond dispute that plaintiff discovered the dishonest or fraudulent character of its employees' acts more than two years prior to filing this suit. As noted earlier, the bond provides the definition of discovery to be applied here. However, case law somewhat guides the Court in construing the bond provision. "The well established rule is that the insured under a blanket employee's fidelity bond is not bound to give notice until he has acquired knowledge of some specific fraudulent or dishonest act." *First Security Savings v. Kansas Bankers Surety Co.*, 849 F.2d 345, 349 (8th Cir.1988); *citing Perkins v. Clinton State Bank*, 593 F.2d 327, 334 (8th Cir.1979) (citations omitted). Mere suspicion on the part of the insured party that an insured loss may have occurred is insufficient to trigger the notice requirement. *Perkins*, 593 F.2d at 334; *Prior Lake State Bank v. National Surety Corporation*, 248 Minn. 383, 80 N.W.2d 612, 616 (1957).[2] Finally, contractual provisions which limit the time within which an action may ordinarily be brought "... are not

especially favored and are construed strictly against the party invoking them." *Prior Lake State Bank*, 80 N.W.2d at 616; *Financial Timing Publications, Inc. v. Compugraphic Corporation*, 893 F.2d 936, 946 (8th Cir.1990).

Defendant asserts that plaintiff was aware of the dishonest and fraudulent character of its employees' acts more than two years prior to commencing this action. Defendant supports its position by citing various portions of the record which plainly reveal that plaintiff was aware, more than two years prior to filing suit, of various acts on the part of Herd, Brown, and Ott which were not entirely in line with accepted banking practice. Plaintiff responds by admitting that it knew of the employees' irregular practices but denies that it knew these deeds were fraudulent or dishonest in nature. Rather, plaintiff avers that, until the completion of a special independent investigation on July 29, 1987, it attributed these practices to negligence or bad business judgment.

The Court has thoroughly examined the record and concludes that summary judgment against the plaintiff is not appropriate on this ground. Defendant points to various regulatory investigations which disclosed many of the acts of Herd, Brown, and Ott which the bank now characterizes as fraudulent. However, in each investigation, the bank received a high overall performance rating.[3] Defendant also relies upon the depositions of several former bank employees who testified to having knowledge of the improper acts. Typical is the testimony of David W. Harrop, a Banc-

---

2. This rule effects sound policy for as plaintiff correctly points out, employers should not be required to rush to a conclusion of employee dishonesty. In the present context charges of dishonesty or fraud must be reported to federal and state regulators, the United States District Attorney, and the FBI. An employer who lacks adequate basis for its charge may cause an employee to suffer irreparable injury, thereby exposing itself to a very genuine threat of liability.

3. For example, defendant relies upon a 1986 FDIC investigation which found that certain loans had been renewed without collecting interest. In addition, the report uncovered that

Herd had kept a note in his desk pertaining to one of the loan renewals and that this note had not been properly booked according to bank procedure. The same report, however, assigns the bank a uniform rating of 2 with the following comment:

> Institutions in this group are fundamentally sound, but may reflect modest weaknesses correctable in the normal course of business. *The nature and severity of deficiencies, however, are not considered material* and therefore such institutions are stable and are also able to withstand business fluctuations quite well. (emphasis supplied)

services vice-president from January 1987 until August of 1989:

A. That I suspected Don Herd of fraud at that point, it's easy to say yes three years after the fact; but I guess I honestly can't answer that. I don't know if that's when we thought, "Boy, there's fraud there." Again, the purpose of the audit was to try to determine that.

Q. Well, I understand that the evidence hadn't been gathered ... All the details of whatever fraud there was wasn't known at that time. What I'm trying to find out is did you begin to assume in April of 1987 that a fraud might have occurred at the bank?

A. Did we assume that a fraud might have occurred?

Q. Yes.

A. Yes.

Q. And you began to assume that in April of 1987?

A. Right.

Viewed in the light most favorable to the plaintiff, this testimony reveals that deponent Harrop no more than suspected the possibility of fraud or dishonesty in April of 1987. As noted earlier, such suspicions are insufficient to establish that plaintiff discovered the fraud.

█ Defendant also contends that fraud and forgery claims filed by two of the bank's debtors, Eugene and Randy Griebel, caused plaintiff to discover a loss within the meaning of the bond in 1985 and 1986. Here, defendant specifically relies upon the second paragraph of bond section 4, containing the bond's definition of discovery. *See supra*, p. 1482. The precise import of this section is subject to dispute. Viewing the second paragraph of section 4 in light of the first paragraph, however, it is sensible to imply a requirement that the third party claims be reasonable. In the absence of such a requirement, an insured under the bond would be required to advise its insurer every time it received a claim or communication which frivolously alleges employee dishonesty. This was likely not the intention of the parties to the bond.

Plaintiff employed an outside firm, Meyers and Meyers, to further investigate its operations in June, 1987. On July 29, 1987, the firm issued a written report. From the information contained in that report, plaintiff realized that fraud or dishonest acts had occurred. That plaintiff commissioned this report is evidence that plaintiff was uncertain the acts in question were fraudulent or dishonest prior to July, 1987.

Finally, the definition of discovery set forth in the bond requires the application of a reasonableness standard. The application of such a standard is a quintessential jury function. Here, the evidence submitted by defendant, though persuasive, does not conclusively resolve this disputed fact issue so as to justify the Court in relieving the jury of this task.

█ In the alternative, defendant moves for partial summary judgment contending that two types of losses claimed by plaintiff are not covered under the bond. First, defendant argues that certain losses which plaintiff incurred as a result of the dishonest *renewal* of loans, as opposed to the dishonest *granting* of loans, are not covered under the bond because they were not "directly" caused by the acts of Herd, Brown, and Ott. Plaintiff's claim for these losses is based upon allegations that the three employees concealed the past-due status of various loans from the board of directors. Based on these representations, at the time each of these loans matured the board opted to renew the loans rather than demand payment. According to plaintiff, by concealing the true status of the loans, Herd, Brown, and Ott caused plaintiff to delay collection actions to a time when the borrowers were unable to pay.

Defendant argues that the dishonest renewal of a loan previously made does not cause the bank damage as (1) the loan money was distributed at the time the loan was originally made, and no funds were "taken" from the bank upon the renewal of a loan, and (2) the loan was collectible when it came up for renewal. Thus, according to defendant, the deterioration in the borrowers' financial conditions and not the dishonest renewal of the loans directly caused plaintiff's loss. Because the bond only covers losses "resulting directly" from the

fraudulent or dishonest acts of employees, defendant contends these losses are not covered.

The question of causation is generally left to the jury. *Federal Deposit Insurance Corporation v. Reliance Insurance Corporation*, 716 F.Supp. 1001, 1004 (E.D. Ky.1989). Under classic proximate cause analysis, if a loss is caused by an act which played a substantial part in bringing about or actually causing the loss and the loss was a reasonably probable consequence of the act the loss is proximate or direct. *American Rockwool, Inc. v. Owens–Corning Fiberglass Corporation*, 640 F.Supp. 1411, 1444 (E.D.N.C.1986). That more than one factor may operate at the same time either independently or together to cause damage does not prevent each factor from being considered a proximate or direct cause. *Id.*

From the record presently before the Court, a jury could reasonably infer that the dishonest acts of Herd, Brown, and Ott in connection with the renewal of certain loans directly caused plaintiff to incur damage within the meaning of the bond. Defendant's argument interprets the bond's causation provision too narrowly. Under defendant's view there could never be coverage for fraud or dishonesty in the administration of a legitimate loan. Whether the parties intended coverage to be so narrow is, at minimum, a disputed fact question. Hence, defendant's motion for partial summary judgment in this regard is denied.

█ Finally, defendant contends that the bond does not cover plaintiff's claims for the loss of accrued and capitalized interest. Defendant relies principally upon section 2(t) of the bond which excludes coverage for "potential income, including but not limited to interest and dividends, not *realized* by the insured." (emphasis supplied). For summary judgment to be appropriate on this ground the Court must find that the potential income exclusion contains no material ambiguities. This the Court is unable to do.

Defendant asserts that the term "realized," as used in the bond, indisputably means "to convert into money." *See Web-ster's New World Dictionary* 1210 (1962). Plaintiff, on the other hand, argues that many banks in the United States, including the bank in question, customarily report utilizing the accrual basis of accounting. Plaintiff points out that, under this practice, the term realized may mean the recognition of revenue by a seller of goods or services. *See Koch Industries, Inc. v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, No. 89–1158–K, slip op., 1989 WL 158039 (D.Kan.1989) (finding a similar potential income exclusion ambiguous). In view of the differing definitions offered by both parties, each of which appears reasonable, and the fact that no evidence has been presented tending to establish which of the definitions applies, the Court finds that the precise interpretation of the potential income exclusion should be left to the jury.

## CONCLUSION

Based upon the files and briefs and arguments of counsel,

IT IS ORDERED that:

1. Defendant's motion for summary judgment based upon the contractual limitation of actions clause is DENIED;

2. Defendant's motion for partial summary judgment on plaintiff's claim under the dishonest renewal theory is DENIED;

3. Defendant's motion for partial summary judgment on plaintiff's claims for capitalized and accrued interest is DENIED.