## Carter Coal Company v. Howard.

(Decided March 9, 1916.)

## Appeal from Knox Circuit Court.

1. Master and Servant—Independent Contractor—Question for Jury —Evidence.—Where the evidence is conflicting, the question whether or not one is an independent contractor is for the jury.

2. Master and Servant—Defective Appliances—Assumption of Risk. —Failure of a master to use ordinary care to furnish the servant reasonably safe appliances for work is not one of the ordinary risks which the servant assumes. It is an extraordinary risk growing out of the negligence of the master and is not assumed by the servant, unless both the defect and the danger therefrom are known to and appreciated by him, or are so obvious that an ordinarily prudent person, situated as he was, would have observed and appreciated them.

P. D. BLACK and BLACK, BLACK & OWENS for appellant.

J. D. TUGGLE and J. B. CAMPBELL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER.—Reversing.

In this action for damages for personal injuries by plaintiff, William Howard, against defendant, Carter Coal Company, plaintiff recovered a verdict and judgment for $250.00. The defendant has moved for an appeal.

The defendant owns a tract of coal land in Knox County and operates a coal mine thereon. A portion of the land is covered by good merchantable timber. To get this timber prepared for market and for use in its mine, defendant contracted with O. P. Penland to cut and saw the timber into various sizes, for which he has paid a stipulated sum per thousand feet. It was necessary to haul the timber for a considerable distance. The company agreed to and did furnish Penland the material for building a track on the land and an engine and some cars for use in hauling the timber. Penland furnished his own saw mill, which was moved to the company's land. According to the company's evidence he exercised no supervision or control over the manner of doing the work, but it merely gave him a list of the various sized pieces of lumber it desired manufactured, and then inspected the pieces to see that they conformed to the specifications. Penland's assistants were employed by him and were subject alone to his control and direction. Plaintiff proved

that he and Penland's other assistants were paid by the coal company and that the company's doctor looked after their injuries. The coal company, however, showed that this method of payment was resorted to merely as a matter of convenience to Penland, and that the sums so·paid out by it to Penland's employes were credited on Penland's accou.t for lumber manufactured and, in fact, paid by him. On cross-examination, Mr. Penland stated that he was working under the direction of the company's inspector, Mr. Smith, who gave him the lengths to cut and directed him how to saw the lumber, and that Mr. Smith was superior in authority to him.

The circumstances connected with the accident are as follows: Plaintiff was a fireman, and it was also his duty to couple cars to each other or to the engine, as the occasion required. In attempting to couple a car to the engine his finger was caught between the draw-heads and so mashed that the first joint had to be amputated. It appears that the lower portion of the draw-head in which plaintiff was attempting to place the link was broken out and an iron band had been put around the draw-head by Penland to hold the link in place. The band lacked three or four inches of being at the end of the coupler, and because of this fact it was necessary to hold the link a little longer than if the draw-head had not been broken. Plaintiff also states that he had been aware of the condition of the draw-head for several days and had frequently made other couplings.

The trial court held, as a matter of law, that Penland was not an independent contractor. Defendant insists that he should have held that Penland was an independent contractor, or, at most, have submitted this question to the jury. If, under the contract between the coal company and Penland, the coal company had no control nor direction over the work, except to see that it was done properly and according to contract, and Penland used his own judgment and methods in the execution of the work, then Penland was an independent contractor. On the other hand, if, under the contract, the coal company had the right to control and direct the details of the work and the manner in which it should be done, and Penland, in carrying out the contract, was at all times subject to its orders, he was not an independent contractor. Ballard & Ballard Company v. Lee's Admr., 131 Ky., 412. Of course, if Penland was an independent contractor, plaintiff was

his servant and not the servant of defendant. If Penland was not an independent contractor, both he and plaintiff were the servants of the defendant. On the one hand, we have evidence that Penland furnished his own saw mill, hired and discharged his own assistants, was paid so much per thousand feet, and in the method of doing the work was not subject to the control of the defendant. On the other hand, the evidence shows that the company owned the land and the timber, furnished the track, cars and engine, and Penland himself says that he was under the inspector, Mr. Smith, who gave him the lengths of the lumber and told him how to saw it. Under these circumstances, the question whether or not Penland was an independent contractor and, therefore, whether or not plaintiff was an employe of the coal company, was for the jury. It follows that the trial court did not err in refusing to direct a verdict in favor of defendant, but did err in holding, as a matter of law, that Penland was not an independent contractor.

The evidence tends to show that plaintiff had known of the condition of the defective draw-head and had worked with it for several days. Whether or not he appreciated the danger therefrom does not clearly appear. The failure of the master to use ordinary care to furnish the servant reasonably safe appliances for work is not one of the ordinary risks which the servant assumes. It is an extraordinary risk growing out of the master's negligence and is not assumed by the servant, unless both the defect and danger therefrom are known to and appreciated by the servant, or are so obvious that an ordinarily prudent person, situated as he was, would have observed and appreciated them. Consolidation Coal Company v. Moore, 166 Ky., 48; C. & O. Ry. Co. v. DeAtley, 159 Ky., 687. It is not claimed that there was any assurance of safety or promise to repair. Hence the court, on another trial, should tell the jury in substance that if they believe from the evidence that the defective condition of the draw-head and the danger therefrom were known to and appreciated by plaintiff, or were so obvious that an ordinarily prudent person, situated as he was, would have observed and appreciated them, he assumed the risk of injury and they should find for the defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.