William H. GROGAN, James B. Shepeard, Raymond Carner and Ottis Lutz, Plaintiffs-Appellants,

v.

UNITED STATES of America and Tecon Corporation, Defendants-Appellees.

No. 15840.

United States Court of Appeals
Sixth Circuit.

Feb. 5, 1965.

James Glenn Apple, Paducah, Ky., for appellants, Charles A. Williams, Paducah, Ky., on the brief.

John C. Eldridge, Dept. of Justice, Washington, D. C., for appellees, John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, John C. Eldridge, Attys., Dept. of Justice, Washington, D. C., William E. Scent, U. S. Atty., Louisville, Ky., on the brief.

Before O'SULLIVAN, Circuit Judge, McALLISTER, Senior Circuit Judge, and WEINMAN, District Judge.

O'SULLIVAN, Circuit Judge.

Plaintiffs-Appellants, William H. Grogan, and others appeal from a judgment for defendant-appellee, United States, in a suit under the Federal Tort Claims Act. Trial was had to District Judge Shelbourne of the United States District Court for the Western District of Kentucky. His opinion is reported as Grogan v. United States, 225 F.Supp. 821 (1963).

Plaintiffs were injured when a scaffold they were climbing collapsed. They were employees of Tecon Corporation which, under contract with the United States, was constructing the Barkley Lock in the Barkley Dam Project on the Cumberland River in Livingston County, Kentucky. The premises involved were owned by the United States. Plaintiffs had received from their employer and its compensation carrier, intervenor United

States Fidelity & Guaranty Co., the benefits of the Kentucky Workmen's Compensation Act, and brought this suit against the United States as a third party tortfeasor. K.R.S. § 342.055.

What was referred to as the scaffold was a construction of stairs, platforms, and a ladder leading to a catwalk, attached to the face of the lock wall, whereby Tecon's workmen were enabled to get to and carry on the work of pouring concrete and other activities incident to the building of the dam wall.

The District Judge found as a fact that the collapse of the scaffold was caused by failure of a steel bolt used to fasten one of the platforms to the lock wall. Plaintiffs fell to the ground with the scaffold and were injured.

Liability was charged to the government on the theory that the Corps of Engineers was negligent in discharging, or failing to discharge, its duty to inspect the scaffolding. This duty and its breach were based on the grounds that the platforms were negligently designed; that the fastening bolts were inadequate for holding the platforms; that the scaffold assembly was an inherently dangerous instrumentality; that the Corps of Engineers, as agents of the owner of the premises, had a nondelegable duty to the plaintiffs to see to the safety of the premises where the work was being done; and that the Corps of Engineers, both by its contract with the Tecon Company and by its practice, had assumed the duty of inspecting the scaffold and had negligently failed to discharge such duty.

The evidence showed that the scaffolding was designed, erected and owned by the Tecon Company as part of the equipment used in carrying out Tecon's contract. Its design and material were not set out in the specifications furnished by the Corps of Engineers and it became no part of the finished structure.

The District Judge's Findings of Fact, which are not clearly erroneous, describe the equipment, the cause of its collapse, and the incident involved as follows:

"(5) The scaffolding involved in this action was constructed of wood and consisted of a stairway of two flights with a platform approximately five feet by six feet at the top of each flight and affixed to the uppermost flight was a ladder leading to a catwalk. The cat-walk was plaintiffs' working area for aligning metal concrete forms used in constructing the lock wall.

"(6) At the beginning of their shift on April 13, 1960, the plaintiffs, each carrying a tool box weighing approximately sixty pounds, were ascending the scaffolding to reach their work area on the cat-walk. They had reached the second platform and were starting up the ladder when the scaffolding pulled away from the lock wall and fell, causing the plaintiffs to fall to the ground and sustain injuries.

"(7) Each of the platforms of the stairway rested on two wooden triangular jacks positioned at opposite ends of the platform. The top side of the jacks extended perpendicularly from the face of the lock wall and parallel to the ground. Each of the jacks was affixed to and supported by a three-quarter inch steel bolt approximately thirty inches in length. Each end of the bolt was threaded and one end was fastened to the jack by a steel nut; the other end was screwed into a metal coupling that was also threaded on each end. The opposite end of the metal coupling was inserted into an opening in the lock wall one and three-eighths inches in diameter and screwed to a threaded anchor road [sic] permanently embedded in the concrete.

"(8) The proximate cause of the fall of the scaffolding, resulting in injury to the plaintiffs, was the breaking of the steel bolt fastened to one of the jacks supporting the upper platform at a point about one-half inch outside the face of the lock wall; the coupling holding the remaining bolt, which was attached to the anchor rod embedded in the lock wall by

four threads or less, was pulled off the anchor rod by the additional pressure placed on it by reason of the broken bolt." 225 F.Supp. 824–825.

To support the claim of negligence, plaintiffs' witnesses, employees of Tecon, testified that the bolt which failed was an all thread bolt, i. e., one with threading along its entire length, and gave their view that a so-called spiral bolt, with threading only at its ends and apparently of larger diameter, would have been stronger and more suitable. An engineering expert, while declining to say that the design employed was negligent, gave his opinion that it would have been better to have three bolts instead of two securing the platform to the lock wall, thus providing a safety factor against a failure of any one of the bolts. There was further criticism of the design and material of the platform.

■ For the defendant, the carpenter superintendent for the Tecon Company testified, in effect, that he designed and directed the building of the scaffold; that it was of standard, safe design and material; that he selected the bolts to be used and that these were also standard for the equipment involved. Within a few minutes after the collapse, a Tecon engineer was handed a bolt by some unidentified person who stated that it was the bolt that failed. Such bolt was thereafter subjected to metallurgical tests which disclosed that a defect in its manufacture, resulting in a brittle spot, was the cause of its failure. While the record is lacking in desirable clarity on the point, such defect was presumably a latent one. While plaintiffs question the sufficiency of the identification of the bolt so tested, we are satisfied that there was sufficient identification to justify the admission of the laboratory tests.

From the evidence before him, the District Judge made the following dispositive Findings of Fact:

"(9) The scaffolding involved here was not inherently dangerous. The design, construction, erection and use of the stairway, platforms, and ladder were in accordance with ac-cepted safe construction standards and practice.

"(10) All of the materials used in the construction of the scaffolding, including triangular jacks, steel bolts, nuts, and couplings, were the property of Tecon and were installed by Tecon's employees.

"(11) There was no showing in the evidence that the Government, by actions of its agents, assumed duties not imposed by the contract with respect to the safety of plaintiffs and others of their class." 225 F.Supp. 825.

■■ Liability of the United States for personal injury under the Federal Tort Claims Act will arise only upon proof that such injury was "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A. § 1346(b). In Kentucky a private person hiring an independent contractor would not be liable to an employee of the contractor for the latter's negligence. White v. Olive Hill Fire Brick Co., 169 Ky. 834, 185 S.W. 107 (1916); Nashville Bridge Co. v. Marsh, 212 Ky. 728, 279 S.W. 1099 (1926); Glover's Adm'r v. James, 217 Ky. 572, 290 S.W. 344 (1927); McLellan v. Brown, 275 Ky. 30, 120 S.W.2d 742 (1938); Turner v. Lewis, 282 S.W.2d 624 (Ky. 1955). The possible exception to this general rule which arises where the cause of injury is an inherently dangerous instrumentality, see Jennings v. Vincent's Adm'x, 284 Ky. 614, 622, 145 S.W. 2d 537 (1940), would not apply here because the District Judge found as a fact that the scaffold assembly was not such. We do not find this factual finding erroneous, nor are we pointed to Kentucky decisions ruling that a scaffold is inherently dangerous as a matter of law. Compare Nashville Bridge Co. v. Marsh, supra, 212 Ky. 728, 279 S.W. 1099

(1926); White v. Olive Hill Fire Brick Co., 169 Ky. 834, 185 S.W. 107 (1916). We need not, therefore, consider whether the limitations of the Federal Tort Claims Act bar suit against the United States on such a theory of liability. See United States v. Taylor, 236 F.2d 649, 653 (C.A.6, 1956), cert. dismissed, 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19 (1957); Wallach v. United States, 291 F.2d 69, 72 (C.A.2, 1961), petition dismissed, 368 U.S. 892, 82 S.Ct. 145, 7 L.Ed.2d 90, cert. denied, 368 U.S. 935, 82 S.Ct. 373, 7 L.Ed.2d 197 (1961); Stratton v. United States, 213 F.Supp. 556, 560 (E.D.Tenn. 1962).

██ Under the factual findings of the District Judge, the only theory upon which liability could be cast upon the Government was plaintiffs' claim that the Corps of Engineers had by contract and conduct assumed responsibility for the safety of the practices and equipment of its contractor, and that it should have concluded that the design and materials of the scaffold assembly were unsafe, or should have inspected the bolt that failed and discovered its defect, even though there was no evidence that such defect would have been discoverable upon visual inspection. To state such a proposition is to answer it. The District Judge's opinion adequately discusses the legal consequences flowing from the contract provisions calling for Tecon's observance of safety standards and the government's reservation of the right to inspect everything that Tecon did. 225 F.Supp. 822–826. He concluded that "the Government had the right, but not the duty" to inspect the work and the contractor's equipment. We agree. Such, substantially, is the holding in Kirk v. United States, 270 F.2d 110, 117–118 (C.A.9, 1959) and Cannon v. United States, 328 F.2d 763, 765 (C.A.7, 1964), cert. denied, 379 U.S. 832, 85 S.Ct. 63, 13 L.Ed.2d 40 (1964).

█ We are also presented with a question of costs. The District Judge allowed as costs mileage beyond the 100 mile extra-district reach of a subpoena for three witnesses who testified for the United States. The apparent reason for allowing such costs was the District Judge's finding that the attendance of such witnesses was made necessary by plaintiffs' refusal, upon request made under Rule 36, Fed.R.Civ.P., to admit facts which he found were "within the plaintiffs' knowledge." Relying on Rule 37(c), he allowed a total of $426.36 mileage at 8 cents per mile for necessary travel of the three witnesses called by defendant.

By its recent decision in Farmer v. Arabian American Oil Co., 85 S.Ct. 411 (Dec. 14, 1964), the Supreme Court has authoritatively resolved the question whether district courts have power to tax mileage fees for travel beyond reach of their subpoenas in favor of such power. Approving a district judge's denial of such fees, the Court noted that "the long-standing 100-mile rule * * * is a proper and necessary consideration in exercising discretion in this field." The Court went on to state that:

"Items proposed by winning parties as costs should always be given careful scrutiny. Any other practice would be too great a movement in the direction of some systems of jurisprudence, that are willing, if not indeed anxious, to allow litigation costs so high as to discourage litigants from bringing lawsuits, no matter how meritorious they might in good faith believe their claim to be. Therefore, the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute. Such a restrained administration of the Rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation." 85 S.Ct. 416.

Quite apparently, the discretion to allow the costs of bringing witnesses from a point more than 100 miles away from the place of hearing and outside the district is not as broad as the discretion conferred upon district judges in many other areas. In the present case, we believe it is properly within our review power to rule that the United States should be

allowed to recover mileage fees only for travel within the 100-mile limit. The prospect of suing the United States is intimidating enough to injured workmen, and the burden of preparing a defense is less overwhelming to it than to most, if not all, individual defendants. A commendable care to protect the federal treasury should not blind us to the fact that as judges of the federal government, we have a particular duty to ensure that highest fairness is observed in its dealings with private litigants.

Nor do we believe that the disputed mileage fees should be allowed as the cost of proving the facts set out in the request for admissions. Plaintiffs have in all apparent good faith questioned the identity of the broken bolt right into this court, and there is no showing that they in fact knew or should have known who was responsible for designing the collapsed scaffold.

Order as to costs modified to allow mileage fees only for travel within 100 miles of the hearing; judgment affirmed in all other respects.

Kiley, Circuit Judge, dissented.