Jesse R. OLDS, Plaintiff-Appellant,

v.

PENNSALT CHEMICALS CORP., Defendant-Appellee.

No. 19733.

United States Court of Appeals, Sixth Circuit.

Sept. 30, 1970.

Charles Allen Williams, Paducah, Ky., for plaintiff-appellant; Neely & Reed, Mayfield, Ky., on brief.

Thomas J. Marshall, Paducah, Ky., for defendant-appellee; Wheeler & Marshall, Paducah, Ky., on brief.

Before PHILLIPS, Chief Judge, McCREE, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

McCREE, Circuit Judge.

Jesse R. Olds appeals from a judgment entered on a directed verdict for defendant Pennsalt Chemicals Corporation in a personal injury action. Olds' employer, Pip Johnson Construction Company, had contracted with Pennsalt to construct a new building on premises owned by Pennsalt, and Olds sustained serious injuries when he fell into an unguarded catch basin and was scalded by steam which was being vented into the hole from two portable heaters which were used to raise the temperature of the floor to permit the installation of polyethylene topping. Olds received workmen's compensation benefits and was thus precluded from suing his employer by Ky.Rev.Stat. § 342.015. He instituted this action against Pennsalt as a third-party tortfeasor under Ky. Rev.Stat. § 342.055. Federal jurisdiction is based on diversity of citizenship.

In directing the verdict, the District Judge made the following statement to the jury,[1] to explain his basis for deciding the case:

Now, while it is not necessary that an explanation be given the jury, because it is a matter of law as determined by the Court, and as I have determined in this instance, but I want you to understand generally, and I will take just a few minutes to try to explain to you what my thinking about this case is. The plaintiff, Mr. Olds, was not an employee of the defendant, the Chemical Company, Pennsalt. He was employed by the Pip Johnson Company, and with Pip Johnson the relationship was that of master and servant —employer and employee. Now you have heard some of the argument in this case that showed that Mr. Olds, as an employee of the Pip Johnson Company, was—you may have heard it, you may not have caught it, and I am not sure it was plainly stated, but the fact is, he as an employee of Pip Johnson was entitled to the benefits of compensation under the Compensation Law of Kentucky, and therefore no suit was filed by him and none has been involved here against Pip Johnson because of that provision of compensation. And the law is, it may be observed, that the owner or occupier of property is not liable for the injury of an employee of an independent contractor or sub-contractor, in the absence of negligence on the part of the owner or occupier. There was an effort made to show that there was this negligence, but there was no evidence as I interpreted it that would warrant a submission of this case to you as to the negligence of the Chemical Company—that is Pennsalt Chemical Company. * * *

There is no evidence in this case that anybody representing Pennsalt knew of what this condition was on the day this occurred. As a matter of fact, it was contended that only Carnahan [the construction engineer] for Pennsalt was the man that had this authority and he was not in there on that day. There was no evidence he knew that there was no lid on it [the catch basin], or evidence he knew that steam was arising out of it sufficient to blind a person walking in the walkway, and therefore I think there was nothing to submit to the jury that would uphold the verdict. So that is the reason, in brief, why I give you this instruction.

Appellant claims that the District Judge erred in directing the verdict, and argues on several grounds that the case should have gone to the jury. We agree with the conclusions of the District Court, and accordingly affirm its judgment.

 Appellant argues first that Pennsalt breached a non-delegable duty to maintain safe working conditions. A Kentucky statute imposes the following duties:

Every *employer* shall:

(a) Furnish places of employment that are safe for the *employee* therein;

(b) Furnish safeguards and safety devices reasonably necessary to protect *his employees* from accidental injuries; and

(c) Adopt and use practices, methods and processes reasonably necessary to render such employment safe.

Ky.Rev.Stat. § 338.030(1) (emphasis added). It is clear that, under Kentucky decisions, Pennsalt was not Olds' employer. McCoy v. Griffith, 196 Ky. 406, 244 S.W. 871 (1922). Johnson's relationship to Pennsalt was that of an independent contractor, and the rule in Kentucky is that a party is not liable for injuries to employees of its independent contractors, without a showing of negligence of the principal. Grogan v. Unit-

---

1. We consider the District Judge's explanation of his decision as good trial practice which tends to make trial procedure more understandable to the jury and hence to make its service more effective.

ed States, 341 F.2d 39, 42–43 (6th Cir. 1965); Simmons v. Clark Constr. Co., 426 S.W.2d 930, 933 (Ky.1968); City of Hazard Mun. Housing Comm'n v. Hinch, 411 S.W.2d 686, 688 (Ky.1967). Appellant does not challenge the District Court's finding that there was no evidence of active negligence on the part of Pennsalt.

██ Nor is Pennsalt liable as owner of the premises on which the accident took place. Under Kentucky law, a landowner is not liable for injuries to an employee of an independent contractor, unless the work done or the materials used constitute a nuisance or are inherently dangerous, Simmons v. Clark Constr. Co., *supra*; Jennings v. Vincent's Adm'x, 284 Ky. 614, 145 S.W.2d 537 (1940), and instrumentalities such as gasoline and scaffoldings have been held not to be within these categories. Jennings v. Vincent's Adm'x, *supra*; Grogan v. United States, *supra*. By analogy, we believe that a Kentucky court would not find the use of steam under the circumstances here inherently dangerous.

█ Appellant also contends that Pennsalt should be held liable under Kentucky law if it agreed, in its contract with appellant's employer, to assume responsibility for safety on the job. Cumberland Coal Co. v. Lee, 119 S.W. 746 (Ky.1909). Appellant argues that several clauses in the Pennsalt-Johnson contract created this duty, and points out that Pennsalt retained a construction engineer to remain on the project at all times to approve the contractor's work. The clauses in the contract upon which appellant places his principal reliance recite:

> 5r. Contractor [Johnson] warrants that he will employ on the job only those men who conform to adequate standards and work with regard to workmanship, efficiency, and responsibility in terms of life, limb or company property. These qualifications shall conform with Owner's [Pennsalt's] standards. Should any question arise with regard to these qualifications, the interpretation of Owner's Construction Engineer shall apply.

> \* \* \* \* \* \*

> 15a. Upon completion of all construction work and prior to acceptance of the facility, Contractor will test all equipment, installations and assemblies in the presence and to the satisfaction of the Construction Engineer or his authorized representative.

The first of these clauses required Johnson to hire only competent men with good safety records, and gave Pennsalt's construction engineer power to determine what a good safety record was. Clearly it shows concern about safety, but it falls far short of imposing on Pennsalt the duty to supervise the project and the right of control. The second clause gives the right of final approval of all work to Pennsalt's representative, but his function is limited to inspection after work is completed and does not involve actual supervision of the construction work. It indicates that Pennsalt's primary concern was that the finished building conform to specifications, and that the construction engineer was not responsible for supervising the details of the day-to-day construction work. *Cf.* Baker v. Pidgeon Thomas Co., 422 F.2d 744, 746 (6th Cir. 1970).

Another clause of the contract expressly vests in Johnson the responsibility for maintaining safety standards on the job:

> 16a. Contractor [Johnson] must comply with safety practices required by law and/or customarily followed for this type of work.

There is no provision in the contract giving Pennsalt or its representative the right to supervise Johnson's compliance with this responsibility. Appellant argues that Pennsalt's right to cancel the contract at any time without cause gave it such power that it could have, and should be held to have a duty to, force Johnson to comply with safety standards. Perhaps this clause gave Pennsalt significant leverage, but we interpret it as a provision in the nature of

a liquidated damages clause since it was followed by other stipulations providing for an orderly termination of the contractual relation in the event that the parties could not work together. Appellant cites no Kentucky authority for the proposition that the right to cancel imposes the duty to supervise, the failure to perform which may result in liability for injuries to the other party's employees.

Finally, appellant challenges one of the District Court's evidentiary rulings. Sam Myers, Johnson's safety engineer, testified at the trial for defendant. During cross-examination, appellant introduced a written statement which Myers had made and had (some months later) signed. The District Judge admitted the contents of this statement into evidence, but instructed the jury to consider it only for impeachment purposes. This ruling, of course, precluded the judge from considering the statement's contents in deciding the motion for a directed verdict.

Under Rule 43(a), Fed.R.Civ.P., the rule most favorable to the reception of evidence, federal or state, must be followed in diversity cases. The recent case of Jett v. Commonwealth, 436 S.W. 2d 788 (Ky.1969), requires admission of contradictory evidence for substantive purposes as well as for impeachment. The question before us, then, is whether Myers' statement, if so considered, would have required a denial of appellee's motion for a directed verdict.

Myers' pretrial statement was as follows:

Mr. Lynch was Pennsalt's chief engineer on this particular job, and Mr. Carnahan was Pennsalt's construction engineer. I believe they both at various times did point out things they considered not safe or unsatisfactory and order changes or corrections made. Mr. Carnahan in particular was very particular about safety glasses and hard hats, and one time

Mr. Lynch saw a light cord across a doorway and had me have it raised up out of the way.

Apparently appellant claims that Myers' statement indicates that Pennsalt had assumed responsibility for maintaining safe working conditions, whether or not the contract imposed such a duty. He argues that this testimony presents an issue for the jury, since Pennsalt disclaimed the assumption of this responsibility. In our view, however, the statement shows only that Pennsalt's men made suggestions as any observant person at the job site might. And even if it did indicate the assumption of a duty, no Kentucky authority is cited, nor does our research disclose any, holding that a party may be held to a duty by the conduct which Myers' statement described. Accordingly, even if the District Judge had considered this evidence in deciding the motion for a directed verdict, he would not have arrived at a different result.

Finally, it is irrelevant whether there is any difference between the federal and state standards for the directing of a verdict, because the facts presented here, under any standard, would not support a verdict for appellant under the applicable rules of law.

In directing the verdict for Pennsalt, the District Judge told the jury:

This is an unfortunate accident. This man has had a bad experience with this injury, and I am sure you know that it is no satisfaction to me to direct your decision of this case, but feeling that the law compels me and I would be shirking from a plain duty if I did not do it, * * * [t]he Court instructs the jury that you will find and return a verdict for defendant Pennsalt Chemical Corporation. * * *

We hold that the District Judge did not err, and the judgment of the District Court is affirmed.