Mildred **COURTNEY**, Administratrix of the Estate of John R. Courtney, Deceased, Plaintiff-Appellant,

v.

**ISLAND CREEK COAL COMPANY**, Defendant-Appellee.

No. 72–1560.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1972.

Decided March 1, 1973.

Ronald W. May, Pikeville, Ky., for plaintiff-appellant. Damon Vaughn, Madisonville, Ky., on brief.

Carroll Morrow, Moore, Morrow, Frymire & McGaw, Madisonville, Ky., for defendant-appellee.

Before EDWARDS and LIVELY, Circuit Judges, and CECIL, Senior Circuit Judge.

LIVELY, Circuit Judge.

This is an appeal from summary judgment in favor of the Defendant Island Creek Coal Company. The facts are not in dispute.

The decedent, John R. Courtney, was employed by Cementation Company of America while working on land owned by the Island Creek Coal Company in Union County, Kentucky. Cementation had a contract with Island Creek to make two air shafts and sink a slope from which coal could be removed in connection with the construction of a new mine on the property of Island Creek.

Cementation was an independent contractor and Island Creek had no right to exercise supervision as to the manner or method in which the work was done. The contract required Cementation to comply with all state and federal safety regulations and Island Creek had the right to impose other safety regulations which were not in excess of those of the state and federal authorities. Island Creek reserved the right to inspect the work as it progressed, to terminate the contract if Cementation failed to supply a sufficient number of skilled workmen or equipment or materials, or if it should persistently disregard applicable laws or ordinances.

At the time of the fatal accident employees of Cementation, including Appellant's decedent, were removing temporary air vents from one of the shafts which had previously been constructed. The employees were working on a platform or work deck which was suspended by cables and raised and lowered by a hoist located on the surface of the ground. The platform had no outside guardrails and no toe boards, and the employees of Cementation wore neither safety belts nor lifelines. The hoist belonged to Cementation and was being operated by its employees and under the direction of its superintendent. Decedent fell to his death when the work deck or scaffold on which he was standing was tipped at an angle. As an employee of Cementation, decedent was covered by workmen's compensation.

Although Island Creek made no inspection of the hoist, cable or platform, several of its supervisory employees, including its chief supervisory engineer, had observed the deck from which the decedent fell and knew that it was not equipped with guardrails or toe plates and that the employees of Cementation wore no safety belts. Island Creek had never called these facts to the attention of any representative of Cementation.

At the time that decedent met his death, the construction of the mine was not complete and no coal had been removed from the mine. Island Creek had applied for a license to construct the new mine and had filed with the Kentucky Department of Mines and Minerals several maps showing the construction of the new mine and the location of the proposed air shafts. The license had been issued and representatives of the Department of Mines had conducted several inspections of the property prior to the date of the accident.

 Jurisdiction is based on diversity of citizenship, and our decision is controlled by the law of Kentucky. It is settled in Kentucky that one who engages an independent contractor is not legally responsible for the torts or negli-

gence of such a contractor unless the work involves a special danger to others. It must either be a nuisance or be inherently dangerous. Jennings v. Vincent's Adm'x., 284 Ky. 614, 145 S.W.2d 537 (1940); City of Hazard Municipal Housing Commission v. Hinch, 411 S.W. 2d 686 (Ky.1967); Olds v. Pennsalt Chemicals Corporation, 432 F.2d 1033 (6th Cir. 1970). This rule has been applied to a number of cases in which scaffolding was involved and it has been consistently held that scaffolding is not an inherently dangerous instrumentality and its use is not an inherently dangerous activity. Nashville Bridge Co. v. Marsh, 212 Ky. 728, 279 S.W. 1099 (1926); Simmons v. Clark Construction Co., 426 S.W.2d 930 (Ky.1968); Grogan v. United States, 341 F.2d 39 (6th Cir. 1965). No Kentucky cases have been cited, or discovered by independent research, in which an injury resulted by reason of a fall from a work platform or scaffolding being used in the construction of an underground coal mine.

The Appellant maintains that the meaning of "inherently dangerous" has been greatly expanded by the decision in Rietze v. Williams, 458 S.W.2d 613 (Ky. 1970). In that case an invitee of an apartment building tenant was permitted to recover from the building manager who had permitted an independent contractor to install a hot water heater in the building in violation of the plumbing code of Kentucky. The evidence indicated that the Plaintiff had been injured by hot water which escaped from the heater. The Kentucky Court of Appeals stated its reasoning as follows:

> In effect the plumbing code here involved placed in the inherently dangerous category an installation which did not conform to the specified safety requirements, and the person who undertakes to make such an installation is responsible for compliance regardless of whom he employs to perform the work. 458 S.W.2d at 618.

The only other case where the Rietze rule appears to have been applied was one involving suit against a landlord by an employee of a tenant. In Kidd v. Price, 461 S.W.2d 565 (Ky.1971), the Kentucky Court of Appeals held that a landlord cannot escape responsibility for violation of safety regulations in an installation on his property by having the tenant do the work. However, it was further held that the landlord is not an insurer of the safety of every plumbing installation made by a tenant for the tenant's benefit, and that a jury question was presented as to whether the landlord knew, or should have known, of the defect.

The significance of the Rietze and Kidd decisions in the present case is that Appellant maintains that applicable safety regulations required guardrails and toe boards on the work platform from which decedent fell, and that failure to so equip the platform placed it in the inherently dangerous category. Prior to the date of the accident in which Appellant's decedent met his death, the Kentucky Department of Labor had adopted safety regulations identified as LAB 65–1 which applied to the construction industry. These regulations required that elevated work platforms be equipped with guardrails and toe boards and further provided that the owner of a project, as well as the contractors, should be responsible for compliance. These safety standards for the construction industry were issued pursuant to Chapter 338 of Kentucky Revised Statutes (KRS).

As the Appellee points out, however, KRS 338.010(3) provides that this Chapter shall not apply to ". . . places of employment subject to the jurisdiction of the department of mines and minerals . . . ." Appellee maintains and the District Court held, that when Island Creek applied for and received a license to construct a new mine on its property and filed required maps, it became subject to the jurisdiction of the Department of Mines and Minerals. However, the mine safety regulations which are set forth in KRS Chapter 352 apply only to commercial

mines. A commercial mine is defined in KRS 351.010(1)(c) as meaning "any coal mine from which coal is mined for sale, commercial use or exchange." Since it was admitted that no coal had been removed from Appellee's new mine at the time of the accident, the District Court held it was not a commercial mine and was not subject to the mining regulations which prescribe safety standards for hoists and cages used for raising and lowering persons in mines.

Appellant forcefully argues that the legislature only intended to exempt places of employment subject to the jurisdiction of the Department of Mines and Minerals from the general safety standards of the construction industry in those situations where the Department of Mines is involved in active inspection, supervision and enforcement of its own regulations. She further maintains that the site of the accident in the present case was under the jurisdiction of the Department of Mines and Minerals in only the most technical sense. She would have us treat the accident location as a construction site subject to the general rules of safety applicable to the construction industry and hold that the exemption contained in KRS 338.010(3) applies only to completed mines which are under the active control of the Department of Mines and Minerals.

There is apparently no legislative history available to assist in determining this question. It cannot be said with any certainty that the legislature would not have intended this apparent hiatus in the application of safety regulations, because KRS 338.010(3) contains numerous other exemptions in addition to the one referring to places of employment subject to the jurisdiction of the Department of Mines and Minerals. However, it is clear that the standards of safety promulgated by the Kentucky Department of Labor were intended for the protection of workers in the construction industry. Cementation, the employer of the decedent Courtney, was not a mining company. It was a general contractor which was incidentally engaged in a project involving the opening of a new mine. Nevertheless, the Department of Mines and Minerals, as well as the Federal Bureau of Mines, made an investigation of the accident. In his report to the Department, the Kentucky inspector gave a detailed account of the accident and made specific recommendations for the prevention of similar accidents in the future. One of these recommendations was that all suspended work decks be equipped with guardrails on all sides.

We have concluded that it is not necessary to decide whether the new mine of Island Creek was under the jurisdiction of the Department of Mines and Minerals. Assuming that the granting of the license and the several inspections were not sufficient to make it a place of employment exempt from the general standards of safety under KRS 338.010(3), still other determinations must be made in reaching our final decision. The Kentucky Court of Appeals has long held that miners working for an independent contractor who operates under a lease from the owner of the coal mine, cannot recover from the owner of the premises for personal injuries or death which occur while working in the mine. Turner, Administratrix v. Lewis and Baker, 282 S.W.2d 624 (Ky.1955); Blair v. Boggs, 265 S.W.2d 795 (Ky. 1954); Stearns Coal and Lumber Company v. Spradlin, 176 Ky. 405, 195 S.W. 781 (1917). While none of these opinions makes a specific finding on the question of whether work in a coal mine is inherently dangerous, nevertheless, the consistent refusal to permit recovery against the owner of the premises by an employee of an independent contractor who is operating a mine is tantamount to the finding that such work is not inherently dangerous.

In two reported cases involving non-mining employees working in or about mines, the same result has been reached. In Cumberland Coal Company v. Lee, 119 S.W. 746 (Ky.1909), an injured employee of an independent contractor who

was hired to drive an entry in an existing mine was permitted to recover from the mine owner only because the owner had undertaken an obligation to keep the entry propped and in a reasonably safe condition. The Court held in Carter Coal Company v. Howard, 169 Ky. 87, 183 S.W. 244 (1916), that an employee of a third person hired by the mine owner to remove timber from the premises could only recover from the mine owner if his employer was not an independent contractor.

KRS 13.081 provides that each agency may adopt reasonable regulations to implement administration of the functions assigned to it by law and shall adopt such regulations as are necessary to the proper execution of those functions. This statute further provides that the power to adopt regulations to implement a particular function is limited by the terms of the grant of authority under which the function was assigned. While administrative regulations which have been duly adopted and properly filed have the full effect of law, Harrison's Sanitarium, Inc. v. Commonwealth of Kentucky, 417 S.W.2d 137 (Ky.1967), nevertheless, by the terms of KRS 13.081 the purpose of such regulations is limited to an implementation of administration of the functions assigned to the agency issuing the regulations. It has been held that the state legislature may delegate to administrative agencies an administrative discretion in the application of law enacted by it. The same cases hold, however, that the legislature may not delegate its power to enact laws. Veail v. Louisville and Jefferson County Metropolitan Sewer District, 303 Ky. 248, 197 S.W.2d 413 (1946); Craig v. O'Rear, 199 Ky. 553, 251 S.W. 828 (1923). Furthermore, Section 28 of the Constitution of the Commonwealth of Kentucky forbids delegation of the power belonging to one department of government to any person or collection of persons belonging to another department. The Department of Labor is part of the executive department of the government of Kentucky

and has no power to legislate. It was beyond the power of the Industrial Safety Board in promulgating the standards of safety for the construction industry to change the settled law of Kentucky by making the owner of premises liable to an employee of an independent contractor for injuries suffered while working on the premises. That portion of the regulation which attempted to make the owner of the premises equally liable with the employer for enforcement of safety standards exceeded the bounds of administrative implementation. The powers of an administrative agency created to perform one specific function are by nature limited and any doubt concerning the existence of a particular power should be resolved against such agency. Henry v. Parrish, 307 Ky. 559, 211 S.W.2d 418 (1948).

The Appellants do not argue that the administrative regulations created a third party action against the owner of the premises in this case, but they do maintain that when the standards of safety were violated, under the holding in Rietze v. Williams, *supra*, the work which the decedent was performing became "inherently dangerous," thus permitting this action against Island Creek. A close examination of that opinion does not support the position of the Appellants. In *Rietze* the Plaintiff was a very young child who was visiting in the apartment of a tenant of the Defendant. As between a landlord and his tenant (or invitees of the tenant) there can be no doubt that the landlord is liable for injuries resulting from his noncompliance with applicable safety laws and regulations. As the Kentucky Court stated the proposition:

> Whatever may be the rights and liabilities as between the landlord and a negligent contractor, we think the purpose and policy of the law is that the innocent tenant (and, through him, his invitee) is entitled to rely on the landlord. 458 S.W.2d at 618.

The Court then went on to state that a landlord may not escape liability to his tenant for injuries resulting from

negligent work because it was performed by an independent contractor. The case cited in support of the general proposition that failure to comply with the plumbing code placed the installation in the inherently dangerous category also dealt with the claim of a disinterested third party rather than the employee of an independent contractor. City of Hazard Municipal Housing Commission v. Hinch, *supra*. That case involved damage from blasting which has long been considered an inherently dangerous activity. No mention was made in the *Rietze* opinion of any previous case involving claims by employees of an independent contractor against the owner of the premises upon which the injury took place. Absent a clear intent to overrule previous decisions such as Jennings v. Vincent's Adm'x., *supra*; Nashville Bridge Co. v. Marsh, *supra*, and Simmons v. Clark Construction Co., *supra*, or explicit inclusion of such cases within the rule we think the Court of Appeals of Kentucky would limit the decision in *Rietze*. Where an installation or mechanism is the property of an independent contractor and is under the sole control of such contractor, a failure to comply with the standards of safety applicable to such installation or mechanism does not, of itself, render it "inherently dangerous" for the purpose of permitting an injured employee of the independent contractor to recover from the principal or the owner of the premises. Simmons v. Clark Construction Co., 426 S.W.2d 930 (Ky.1968).

One other contention should be answered briefly. It is maintained that the contract provisions which gave Island Creek the right to terminate the contract with Cementation for breaches of applicable laws and regulations imposed upon Island Creek a duty, not to Cementation, but to the decedent, to take steps to obtain a correction of the safety defects which it admittedly knew existed. The District Court pointed out the similarities between the contract in this case and that in Grogan v. United States, *supra,* and observed that the same argument had been made in *Grogan*. We do not find any provision in the contract between Island Creek and Cementation which imposed affirmative obligations on Island Creek to take steps for the safety of Appellant's decedent.

The judgment of the District Court is affirmed.