**Johnny W. COCHRAN, Plaintiff,**

v.

**INTERNATIONAL HARVESTER COMPANY, Defendant.**

**Civ. A. No. C 74–180 L(A).**

United States District Court,
W. D. Kentucky,
Louisville Division.

Sept. 2, 1975.

William D. Grubbs, Robert C. Hobson, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

ALLEN, District Judge.

This action is submitted to the Court on the motion of the defendant for summary judgment following the taking of exhaustive discovery by both parties on the question of liability.

Plaintiff was an experienced sheet metal worker employed by Triangle Sheet Metal Company, hereinafter "Triangle". Triangle had a contract with the defendant to install duct work and dust removal equipment at defendant's plant.

On July 18, 1973, plaintiff was installing a sheet metal elbow which weighed between 350 and 400 lbs. and was standing on an aluminum "pick board" which was some 15 feet above the ground and was 12 inches in width and had no guardrails. While so engaged, apparently a hook on a chain hoist slipped out of the eye on the sheet metal elbow, which fell from a distance of about 2 to 3 feet, and caused the board to bend and have an effect similar to a diving board, thereby projecting the plaintiff into the air and causing his fall to the floor with consequent serious injuries.

Prior to the accident, a foreman of Triangle who was named Francis L. Elliott was in immediate charge of the work being done at the defendant's foundry by Triangle. He testified in his deposition that there were various skids and drums located in the area where the plaintiff was to work on installing the sheet metal elbow. He further testified that he went to see an individual whom he thought was the production foreman for the defendant and asked him whether he would remove or see to it that the drums and skids were removed. He stated that he told the man that he would like to have them removed so he could build a scaffold. He could not identify the man he talked to, but did state that his understanding was that this was a production superintendent's or a production foreman's office.

C. M. Leibson, Louisville, Ky., for plaintiff.

The contract between the defendant and Triangle called for Triangle to modify the ducts on four dry-type rotoclones in what was known as the core room, to combine them into one wet-type system, as per the drawings provided by the defendant. It was originally contemplated that the work would be done during the time that the defendant's foundry was shut down, but subsequently it was agreed that the work would be done even though the plant was not shut down.

The contract itself contains no reference to any right of the defendant to supervise the work done by Triangle, but there was testimony that Mr. Mason, on behalf of the defendant, who is an engineer, did two or three times a day go to the area where the work was being done to see that it was in compliance with the plans. There was also proof to the effect that if representatives of the defendant saw that work was being done in an unsafe manner, they would have a right to direct that any work being done in an unsafe manner be done in a safe manner. See deposition of Norman Robb taken on the 21st of June, 1974, p. 72, and deposition of Hugh Mason taken on the 30th day of January, 1975, p. 14.

There was proof that International Harvester, through its employees, had knowledge of the fact that the pick was being used, but there was no proof that defendant at any time attempted to exercise any control over Triangle with respect to safety precautions on the job which culminated in plaintiff's injuries.

In addition to the contract, defendant furnishes a form to each of its contractors which is entitled "General Instructions to Contractors". The first sentence of the preamble to that form reads:

"For the information of all outside contractors, we are listing below certain Fire, Safety, Traffic and other regulations which are intended as a guide to prevent any injury, loss or damage to personnel, equipment or property of either the contractor or International Harvester Company. By

instructing your supervisors to our mutual benefit."

Paragraph 11 provides in part:

"11. All excavations, trenches, overhead or demolition work shall be provided with barricades to protect workmen and employes."

Paragraph 14 provides:

"14. If it is necessary to work overhead, the area below must be roped off to protect employes from falling objects."

Dr. Donald Cole, an expert witness for the plaintiff, testified that a safeway scaffold should have been provided to the plaintiff on which to work, and that the use of a pick board was in violation of Kentucky safety standards and Federal Occupational Safety and Health Act, known as O.S.H.A., promulgated pursuant to 29 U.S.C. § 651 et seq.

The theories upon which the plaintiff predicates his right to recovery are, broadly speaking, two in nature. The first is based on statute and upon the contention that the defendant violated safety standards set up by Kentucky regulations promulgated pursuant to statutes and, in the alternative, violated the O.S.H.A. safety standards promulgated pursuant to statutes. The second theory is based on Sections 413, 414, 416 and 427 of the Restatement of the Law, Torts 2nd Edition. These four sections are quoted verbatim in *King v. Shelby Rural Electric Cooperative Corporation*, 502 S.W.2d 659 (Ky.1974) at p. 661. Briefly, they provide four exceptions to the general rule that an employer is not liable for physical harm caused to another by the act or omission of an independent contractor. For their exact language, we refer the reader of this opinion to the *King* case. We note that in each section it is stated that an owner who entrusts work to an independent contractor is liable to others under special circumstances such as unreasonable risk of physical harm, negligence in exercising control, dangerous work in absence of special precautions, and negligence as to danger inherent in the work.

Sitting as a diversity court pursuant to *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we have examined the following authorities:

Simmons v. Clark Construction Company, 426 S.W.2d 930 (Ky.1968);

Grogan v. United States, 341 F.2d 39 (6th Cir. 1965);

King v. Shelby Rural Electric Cooperative Corporation, supra;

Nashville Bridge Company v. Marsh, 212 Ky. 728, 279 S.W. 1099 (Ky.1926);

Olds v. Pennsalt Chemicals Corporation, 432 F.2d 1033 (6th Cir. 1970);

Jennings v. Vincent's Administratrix, 284 Ky. 614, 145 S.W.2d 537 (Ky.1940),

as well as *Bright v. Reynolds Metals Company,* 490 S.W.2d 474 (Ky.1973), and the statutes and regulations relied upon by the plaintiff.

Returning to the statutory theory relied upon by the plaintiff the Court notes that the argument is made by plaintiff that the use of the pick board violated Kentucky safety standards for the construction industry, which were promulgated pursuant to K.R.S. 338.040. That statute was repealed by the Kentucky Legislature effective March 27, 1972 and was no longer in effect on the date of the accident. Also, K.R.S. 338.160, the scaffold statute, had been repealed effective March 27, 1972. The Kentucky Department of Labor had promulgated safety standards pursuant to K.R.S. 338.040, the substance of which is that the use of pick boards in construction work above a height of 10 feet is in violation of the regulation. Also, apparently the regulation provided for guardrails to be installed on scaffolding to be used over 10 feet above the ground.

■ The Court notes that it does not have the specific regulation relied upon by the plaintiff before it, but observes that in any event it no longer had the force of law, since the statute providing for its issuance had been repealed. Even if we should assume that plaintiff is correct, and that these regulations were still in effect as of the date of the accident, despite the repeal of the statute under which they were issued, the Court observes that in *Courtney v. Island Creek Coal Company,* 474 F.2d 468 (6th Cir. 1973), opinion by Judge Pierce Lively, it was held that:

". . . [i]t was beyond the power of the Industrial Safety Board in promulgating the standards of safety for the construction industry to change the settled law of Kentucky by making the owner of premises liable to an employee of an independent contractor for injuries suffered while working on the premises." See 474 F.2d at p. 472.

As Judge Lively points out:

". . . [t]hat portion of the regulation which attempted to make the owner of the premises equally liable with the employer for enforcement of safety standards exceeded the bounds of administrative implementation. The powers of an administrative agency created to perform one specific function are by nature limited and any doubt concerning the existence of a particular power should be resolved against such agency. *Henry v. Parrish,* 307 Ky. 559, 211 S.W.2d 418 (1948)."

■ In the instant case, the Kentucky regulations relied upon by the plaintiff attempt to fix liability upon the owner of the premises for enforcing safety measures in the same manner as it attempts to impose them on the employer. *Courtney* is plain authority for holding that this cannot be done.

At the time that the accident occurred, Kentucky had not promulgated new regulations under its Occupational Safety and Health Act of 1972, K.R.S. 338.011 et seq. There was, however, in effect the federal O.S.H.A. found in 29 U.S.C. §§ 651 et seq. Under the regulation promulgated subject to that Act, it is a violation of safety standards for employers to use pick boards and scaffolding without guardrails at a height of over 10 feet. Also, it is a violation to provide planks of less than 20 inches in width or more than 30 inches in width where sus-

pended between two points, as was the case here.

■ Clearly, if these regulations are applicable to defendant and a violation of them occurred, then a motion for summary judgment is not well taken. However, the Court's reading of the Act and the interpretation placed upon it by O.S.H.A. in a decision found in the case of *Secretary of Labor v. Richard Briggs, et al.,* 2 OSHC 3098, leads to the conclusion that the Act does not apply where the worker was an independent contractor and not an employee of the owner.

The Court is persuaded also by 29 U.S.C. § 653(b)(4) which provides that the Act does not "enlarge or diminish or affect in any manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment."

■■ As was held in *Hare v. Federal Compress and Warehouse Company,* 359 F.Supp. 214 (N.D.Miss.E.D.1973), this statute does not enlarge the responsibility of owners of property to the employees of independent contractors and this Court is of the firm belief that it was not intended to apply in a factual situation, such as this, to the defendant who did not employ the plaintiff and who was an employee of Triangle, which has duly paid him workmen's compensation on account of the injuries he has suffered as a result of his unfortunate fall.

■ Turning now to the Restatement of the law theories of the plaintiff, we observe *King v. Shelby Rural Electric Cooperative Corp., supra,* which is directly in point and is grounds for the granting of summary judgment to the defendant. In that case, King was an employee of an independent contractor which, in turn, was employed by Shelby to convert a single-phase transmission line to a three-phase line. King was severely burned while working on an energized line and was paid workmen's compensation benefits as an employee of the independent contractor. He filed suit against Shelby seeking recovery against it on three grounds:

"1. Shelby was liable for the negligence of its independent contractor;

2. Shelby was liable because of its own negligence resulting in injury to appellant;

3. Shelby violated certain contractual duties owed to appellant."

Shelby admitted that the independent contractor was negligent, but contended that the accident resulted from the independent contractor's sole negligence or from its negligence and the contributory negligence of the appellant.

The Court of Appeals began with the general rule that an employer is not liable for physical harm caused to another by the act or omission of an independent contractor, citing *Simmons v. Clark Construction Company, supra* and *Jennings v. Vincent's Adm'x, supra* ; and 57 C.J.S. *Master and Servant* § 584; *Restatement, Torts* 2d, Sec. 409.

The opinion then goes on to state that there have been a number of exceptions to this general rule, and that one of the recognized exceptions arises from those situations involving work of an inherently dangerous nature. The appellant contended that work upon high tension transmission lines was inherently dangerous and came within the exception, but the Court of Appeals held that an employer's responsibility for the negligence of his independent contractor engaged in the performance of work known to be inherently dangerous, and the so-called nondelegable duties arising out of such work do not extend to the employees of the independent contractor. See 502 S.W.2d at p. 662.

The reasoning adopted is very clear and is two-fold. The first reason is that in the case of industrial accidents the vast majority are covered by workmen's compensation losses, and to that extent the employer of the independent contractor does not escape or shift liability, since he, in effect, pays the premiums for workmen's compensation coverage

and, therefore, even though the work is inherently dangerous, he does not escape liability or shift liability to the independent contractor.

The second reason stated by the court is that there does not seem to be any valid reason why an employer of an independent contractor for the performance of specific work should be subjected to a greater liability than he would have if he had utilized his own employees on that particular work. The court then went on to hold that it was not clear that Shelby retained controls beyond those necessary to insure satisfactory progress of the work and an acceptable result, but that if he did reserve sufficient control in its contract to govern the mode, manner and method of the performance of work, Electricom (the independent contractor) was its employee rather than its independent contractor, and as such, the employees of Electricom became the employees of Shelby and could not maintain a common law action for injuries arising out of their employment. See *Mahan v. Litton,* 321 S.W.2d 243 (Ky.1959).

If, on the other hand, Shelby only retained the control necessary to achieve the desired result, then the relationship was that of employee-independent contractor and Shelby's liability for the negligence of the independent contractor did not extend to the employees of the independent contractor.

*King v. Shelby Rural Electric Cooperative Corporation, supra,* is a logical outgrowth of the development of Kentucky case law pertaining to injuries suffered to employees of an independent contractor while working on the defendant's premises. It extends the nonliability of the employer even to situations where the work is inherently dangerous and, therefore, must stand for the proposition that where there is an injury to an employee of a person who has contracted to do work for the owner of the premises and an injury occurs to such employee, no liability may be imposed upon the employer where workmen's compensation is paid to the employee, with the exception of those situations possibly where there might be a hidden danger created exclusively by the owner.

While the plaintiff has attempted to distinguish *King,* the attempt is without force, since, in the instant case, the danger of working on a pick is certainly not any greater than that of working on high tension electrical lines and in all probability the danger is less. However, even under pre-*King* law, we believe that the defendant might have been entitled to summary judgment.

In *Courtney v. Island Creek Coal Company, supra,* the factual situation was very similar to the case at bar and the Sixth Circuit affirmed summary judgment granted by Chief Judge Gordon to the defendant. In that case, the employees of the independent contractor were working on a platform or work deck which was suspended by cables and raised and lowered by a hoist located on the surface of the ground. The platform had no outside guard rails and no toe boards, and the employees of the independent contractor wore neither safety belts nor lifelines. The hoist belonged to the independent contractor and was being operated by its employees and under the direction of its superintendent.

Decedent fell to his death when the work deck or scaffold was tipped at an angle. As an employee of the independent contractor the decedent was covered by workmen's compensation. The owner's employees, including its supervisory engineer, knew that the deck was not equipped with guardrails or toe plates and that the employees wore no safety belts, but did not call this fact to the attention of the independent contractor.

Judge Lively stated in the opinion that there was no liability imposed upon an owner to an employee of an independent contractor unless the work was either a nuisance or inherently dangerous, and he stated that this rule had been applied to a number of cases in which scaffolding was involved where it was consistently held that "scaffolding is not an inherently dangerous instrumentality and its use

is not an inherently dangerous activity." He went on further to find that work in a coal mine is not inherently dangerous, and he clearly distinguished *Rietze v. Williams*, 458 S.W.2d 613 (Ky.1970) which permitted an invitee of an apartment building tenant to recover from the building manager who had permitted an independent contractor to install a hot water heater in the building in violation of the plumbing code of Kentucky.

Judge Lively stated that the *Rietze* opinion and that of *Kidd v. Price*, 461 S.W.2d 565 (Ky.1971) were distinguishable because they involved a suit between a landlord and his tenant and an invitee where there is no doubt that the landlord is liable for injuries resulting from his noncompliance with applicable safety laws and regulations. He did not discuss further *Kidd v. Price, supra,* where it was held that a landlord was liable to an employee of a tenant for violation of safety regulations where he allowed the tenant to do the work.

In *Grogan v. United States, supra,* plaintiffs were injured when a scaffold they were climbing collapsed. They were employees of a company which was under contract with the United States and which was constructing the Barkley Lock on premises owned by the United States.

The evidence showed that the scaffolding was designed, erected and owned by the contractor, and that its design and material were not set out in the specifications furnished by the Corps of Engineers and it became no part of the finished structure.

The accident occurred as a result of the breaking of a steel bolt fastened to one of the jacks supporting the upper platform at a point about one-half inch outside the face of the lock wall. The testimony showed that the bolt had a latent defect and plaintiff's experts testified that the bolt should have been of a better design and material.

The Sixth Circuit stated that the only theory upon which liability could be cast upon the Government was plaintiff's claim that it had by contract and con-

duct assumed responsibility for the safety of the products and equipment of its contractor, and that it should have inspected the bolt and discovered its defect. The district judge stated, which was affirmed on appeal, that the contract provisions called for the contractor's observance of safety standards and the Government's reservation of the right to inspect everything that the contractor did. He concluded that " 'the Government had the right, but not the duty' to inspect the work and the contractor's equipment." The Sixth Circuit agreed. 225 F.Supp. 821, 826, W.D.Ky.

Finally, in *Simmons v. Clark Construction Company, supra,* the appellee contracted with the Towers Motor Inn. Inc. to erect a building. Two regular employees of a sub-contractor of Clark were directed by Clark to mount a horizontal scaffold or hoist to clean the metal and glass on the exterior of the building. The scaffold, hoist, all appliances and safety belts used by the employees, Simmons and Pate, were furnished exclusively and maintained by Clark. The scaffold was suspended from a cable which was raised and lowered by a large crane operated by Clark. There were cable harnesses attached to a hook at the end of the crane's cable supporting either side of the scaffold and at each end of the scaffold there were clamps to which the cable was attached.

The two men were hoisted, and while working at a high level, the free end of the cable supporting one end of the scaffold slipped through the clamp leaving that end of the scaffold unsupported. It dropped causing the scaffold to be suspended in a vertical position and, as a result, the men were thrown against their safety belts which were broken, and they fell approximately 80 feet, resulting in the death of Pate and permanent injuries to Simmons.

Summary judgment was entered denying relief, and on appeal the appellants contended that the owner was liable on the theory that the work Simmons and Pate were doing was inherently dangerous, even though Clark was an indepen-

dent contractor. The court cited K.R.S. 338.160(1) which provided:

"No person employing or directing another to perform any labor in erecting, improving, altering, repairing or painting any structure shall knowingly or negligently furnish, erect or cause to be erected unsuitable or improper scaffolding, hoists, stays, ladders or any other structure that will not give proper protection to a person so employed or directed".

It then stated that the law was directed to the persons employing or directing the workmen in the performance of their duties, and found that Towers did not employ Simmons or Pate and did not direct Clark or either of these men to use the scaffolding. Also, it was pointed out that it did not have the right or duty to direct how the work was to be done.

The court then went on to state that as between the owner and employees of an independent contractor, the owner is not liable to such employees unless ". . . the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know . . . ." See *Hotel Operating Company v. Saunders' Administrator*, 283 Ky. 345, 141 S.W.2d 260 (1940).

Here, there is no proof that the defect or danger was hidden and known to International Harvester and not known by plaintiff or his foremen and employer. *Simmons v. Clark Construction Company, supra,* is, therefore, authority also for the granting of summary judgment to the defendant.

Plaintiff relies heavily upon *Bright v. Reynolds Metals Company, supra,* as supporting its theories of recovery. There Reynolds desired to construct a rolling mill. It undertook to supervise the construction with its own personnel. It contracted with Schickli & Brothers, Inc. to do the work of excavating the site and enclosing the foundation for the mill structure. Bright, one of Schickli's employees, was injured while cutting out some old concrete at the excavation site. He brought suit against Reynolds alleging negligence of its employees in the way they had stacked some rolls of aluminum foil in the area where he was working.

Reynolds contended that it was a "principal contractor" within the meaning of K.R.S. 342.060 and was, therefore, liable to Bright for workmen's compensation and, therefore, immune from common law liability. A summary judgment was entered for Reynolds, but on appeal the Kentucky Court of Appeals reversed. The court held that Reynolds was not a "principal contractor" and, therefore, it was not liable under the Workmen's Compensation Act and was subject to suit in negligence. However, no discussion was had by the court of the theories of negligence upon which Bright sued and no discussion was had in *King v. Shelby Rural Electric Cooperative Corporation, supra,* of *Bright v. Reynolds Metals Company, supra.* All that this Court can deduce from its reading of *Bright* is that the trial court entered summary judgment on the one theory that Reynolds was the "principal contractor".

Apparently, the only proposition for which *Bright* clearly stands is that the owner of premises does not become a "principal contractor" within the meaning of K.R.S. 342.060. We believe that *King* is so sweeping and so thorough in its analysis, that *Bright* does not afford any assistance to the plaintiff in opposing the motion for summary judgment, and conclude that the motion is well taken.

We have this day entered a summary judgment dismissing the complaint of the plaintiff and awarding costs to the defendant.